MONTGOMERY, J., dissenting.
The plaintiff alleges that he was in the employment of the defendant company in its finishing mill near the town of Spray, N.C. That he was directed by the defendant's superintendent to work at a machine known as a "napper." That there was attached to said machine a large pulley run by belting connecting with the shafting overhead. On the inner or lower side of the machine was a smaller pulley which drove a fan or other part of the machinery and is run by a smaller belt. This smaller pulley is not grooved, and the belt at times slips and has to be replaced by the operator. Defendant's superintendent, who had control of the department where plaintiff worked and directed and controlled plaintiff, told him not to stop the machine when the smaller belt slipped; that he could safely replace the belt without stopping the machine, and ordered him not to stop the machine, but to replace the belt, if it should slip, while the machine was in operation. That plaintiff was ignorant of the machinery, having only a few months' experience, as defendant well knew. That plaintiff, under the command and direction of the superintendent, whom he thought an experienced operator and well acquainted with the machinery and its operation, attempted to replace the slipped belt as directed, when he was caught by the larger belt and hurled against the wall of the building, his back striking a post or wooden beam, and injured. That to attempt to fix said belt while (339) the machine was in motion was a dangerous and hazardous undertaking, well known to defendant, or ought to have been well known to it, and, notwithstanding this fact, the defendant's superintendent *Page 255 
carelessly, negligently, and recklessly ordered plaintiff, who was ignorant of the danger, to attempt to adjust the slipped belt during the operation of said machine. That by reason of being thrown against the post, as aforesaid, he was seriously injured, etc.
The defendant admitted the manner in which the machine was constructed and operated, the way the belt was adjusted, etc., but denied the allegation in all other respects. It also alleged that the "napper" was the newest and most approved pattern, standard in make, and equipped with all approved safety appliances and safeguards in general use, etc. That necessarily the operation of such machine was attended with some risk, which is apparent upon an inspection of it, and this plaintiff well knew when he accepted the employment; that he operated two months without injury, etc.; that he assumed the risk incident to the employment.
Defendant also alleged that if plaintiff was injured it was the result of his contributory negligence. The court submitted, upon the merits, three issues: 1. Was the plaintiff injured by the negligence of defendant? 2. Did plaintiff, by his own negligence, contribute to his injury? 3. Was there an assumption of risk on the part of the plaintiff? An issue as to damage. The jury answered the first issue "Yes" and the second and third "No." From a judgment upon the verdict the defendant appealed.
After stating the facts: The record contains sixty-three (340) exceptions, many of which are directed to the same question and are properly taken to the save the point. There was a motion at the close of the testimony to nonsuit, which was properly denied, thus disposing of exceptions 1, 2, 8, 9, and 10.
We will first discuss the exceptions to the admission and rejection of testimony. Exceptions from 12 to 16 inclusive cannot be sustained. Exceptions 17 to 18 are directed to the ruling upon the following question to Dr. A. P. Davis: "Suppose the facts to be, and the jury so find, that he (plaintiff), on the 28th or 29th of June, fell from a truck six inches high to a floor, upon his buttocks, or partially so; that he made no complaint about it to any one as having received any injuries from it; that on the morning of 3 July he was thrown by a belt, with his back striking a studding in the wall — suppose the jury should find that to be the fact, and he worked then for a night, perhaps two nights, complaining of pain — to which of these causes would you attribute the *Page 256 
injury?" To understand the purpose of this question, it is proper to say that there was evidence that on 28 June plaintiff was thrown from a truck six inches high and caught on his buttocks and his hands; that he did not feel any pain from this fall; that he was caught by the belt and thrown against the post on the latter part of the night of 2 July. He explained the manner in which he was injured, etc. There was evidence tending to show that plaintiff had said that he sustained the injury by falling from the truck, and evidence that he said he sustained it by being caught in the belt. Several physicians who attended him were examined as to his condition and the cause of it, etc. It was also in evidence that Dr. Davis had attended plaintiff. The plaintiff was insisting and seeking to show to the jury that he was injured by being caught in the belt, while the defendant was insisting and (341) seeking to show that the injury was the result of the fall from the truck. It thus became relevant to have the opinion of the physicians.
Dr. Davis testified that he saw plaintiff on 10 August, and the condition in which he found him — paralyzed, almost completely, from his lower extremities, etc. — and that he was permanently paralyzed, his limbs very much emaciated; that he would never walk, etc.; that his nerves were almost destroyed. In answer to the question objected to, Dr. Davis said: "Granting that the suffering was only after the last injury, I would more than likely attribute it to the latter." He was then asked: "A person falling vertically, what is the result?" Answer: "It might cause concussion of the spinal cord." The record shows that defendant objected to the question, but not to the answer. This is necessary to present the question of its admissibility upon appeal when it is not responsive to the question. Perry v. Jackson, 88 N.C. 103; Bost v. Bost, 87 N.C. 477. Passing this objection, however, we think that while the form of the question may be open to criticism, the answer is so vague and indefinite that no possible harm could have been done to the defendant. The physician simply said what common experience would have suggested to any mind. It would seem quite self-evident without the aid of expert testimony that if a man has a fall which causes no suffering, as in this case, one would more likely attribute the suffering to the last fall. This might have been found by the jury as a matter of common experience and observation or as material evidence. The exception cannot be sustained.
Dr. Thomas was asked the same question, and answered: "I would say this second injury; because a common fall, sitting-down fall on that end on a smooth floor is so frequent with no bad results. Still, from a direct violence against the spine, this is almost sure to (342) produce some serious results." In this instance the defendant *Page 257 
excepts to the answer as well as to the question. We can see no valid objection to the answer. The witness simply tells the jury what every man of common sense and observation knows to be true. This witness, after an examination as to the formation of the vertebrae, spinal cord, etc., is asked a hypothetical question as to whether, in his opinion, the injury to the plaintiff is permanent. The defendant objects to the question, but not to the answer. We can see no valid objection to either. There was a great deal of testimony introduced by both parties of this character. We think that the exceptions to it are without merit. It was very important to enable the jury to come to a satisfactory conclusion in regard to the cause of the condition in which the plaintiff was conceded to be. The physicians were intelligent and, so far as we can see, there was no marked difference in their opinions. All of the testimony showed that the plaintiff is seriously and permanently injured. We have examined the other exceptions to the admission and rejection of testimony, and find no error. His Honor instructed the jury upon each issue. Among other instructions, he gave the following:
"Negligence is a want of ordinary care, a failure to exercise that care which a man of ordinary prudence would have exercised under the circumstances. It is a failure to perform some duty imposed by the law. The law imposes upon the master the duty of using ordinary care to provide for the servant reasonably sound and safe appliances and machinery, and a reasonably safe place and methods to do his work, and on entering into employment the servant has the right to assume that these duties have been performed, and may, without blame, act upon this assumption until some defect becomes so apparent that it may be discovered by the exercise of ordinary care. The master is not required to furnish the best machinery and appliances, nor is he required to provide the safest place or methods, but such as are reasonably safe. The law also requires the servant to exercise ordinary (343) care for his own safety. It is also a part of the contract of employment that the servant assumes the ordinary risks of his employment and also the risk incident to dangerous work or dangerous methods of work, if they are obvious.
"If you find from the evidence, and by the greater weight of the evidence, that the defendant directed the plaintiff to put the belt on the smaller pulley by placing his hands through the larger belt while in motion, and that this was not a reasonably safe way to do what he was required to do, and that while so doing he was injured, and that the unsafe way, as stated above, in which he was doing the work according to directions was the proximate cause of the injury to the plaintiff, then it will be your duty to answer the first issue `Yes.' *Page 258 
"If the plaintiff has failed to satisfy you that the method adopted was not a reasonably safe method, the jury should answer the first issue `No.'
"If the plaintiff has satisfied you that the method adopted was not a reasonably safe method, but he has failed to satisfy you that this was the real cause of his injury, the jury should answer the first issue `No.'
"If the injury to the plaintiff was the result of an accident, the jury should answer the first issue `No.'
"If upon a careful consideration of the evidence you cannot find how the fact is from the evidence, the jury should find the first issue `No,' for the reason that the burden upon that issue is upon the plaintiff.
"While the law imposes a duty upon the master, it also imposes a duty upon the servant. It requires him to exercise ordinary care for his own safety, to use his intelligence and his senses, and it holds him responsible if he is injured by his failure to exercise such care. It requires him to observe the machinery at which he is working and the appliances used, and to discover those dangers which a man of (344) ordinary prudence would discover, and if he fails to perform his duty and is injured thereby, he cannot recover damages.
"If you find from the evidence that the plaintiff had worked at this napper machine for four weeks, and that the danger of being injured if he was caught in the driving belt and pulley attached to it was open and obvious and known to him, and that after such knowledge he continued to work at said machine, you will answer the third issue `Yes.'
"If you find from the evidence that the plaintiff knew of the danger of attempting to replace the belt on the pulley while the machine was in operation, and appreciated the danger and continued to work at said machine, and attempted to replace the belt when it slipped off the pulley, then the plaintiff assumed the risk and you would answer the third issue `Yes.'
"Assumption of risk does not mean that, in all cases where the plaintiff has knowledge of the defects of dangerous machinery and goes on with the work, he assumes the risk, but the law is that where the defendant fails to perform its duty and furnish the plaintiff with safe and suitable methods of doing the work, the plaintiff will not be held to assume the risk in undertaking to perform a dangerous work unless the act itself is obviously so dangerous that in its careful performance the inherent probability of the injury is greater than that of safety, or unless it is a danger ordinarily incident to the employment, or unless obvious, or one which the servant may discover by the exercise of ordinary care."
The court charged the jury fully upon the question of damages.
We have examined the charge and exceptions thereto with care, and *Page 259 
find no error in the charge. The questions were largely for the jury, under the application of general and well-recognized principles of law. The charge is clear and full. The damages awarded are large, but that was a matter for the jury. The plaintiff is a physical (345) wreck. While we do not undertake to do more than suggest, from the cases which have been before us in which injuries have been sustained by operatives in cleaning or otherwise putting their hands into dangerous places, while the machine is in motion, it would seem that economy as well as regard for the safety of operatives would suggest that rules be made prohibiting, instead of commanding, such action by them. The courts recognize that persons working in mills and other employments where powerful and dangerous machinery is used assume certain risks, but it is the duty of superintendents and others having charge of the employees to use every reasonable precaution to protect them from injury.
The judgment must be
Affirmed.
WALKER, J., concurs in result.