DAVID MOORE v. W. H. EDMISTON.

To vitiate and avoid a verdict, it must appear upon the record that un-
due influence was brought to bear on the jury. All other circum-
stances of suspicion address themselves exclusively to the discretion
of the presiding Judge, in granting or refusing a new trial, which
discretion is not a proper subject of review by this Court.

To give parties the benefit of the provision of sec. 299, C. C. P. allow-
ing an appeal from an order granting or refusing a new trial, the pre-
siding Judge should put upon the record the matters inducing the
order, so that this Court can see whether the order presents a matter
of law which is a subject of review, or matter of discretion which
is not.

(*State* v. *Miller*, 1 Dev. & Bat. 500; *State* v. *Tilghman*, 11 Ired. 573;
*Exchange of Columbia* v. *Tiddy*, 67 N. C. Rep. 169; *Love* v, *Moody*,
68 N. C, Rep. 200; *Vest* v. *Cooper*, *Ibid.* 131, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1874, of the Superior
Court of CALDWELL county, before his Honor, *Mitchell, J.*

The jury rendered their verdict in favor of the defendant
upon all the issues submitted. Plaintiff moved for a new trial,
which his Honor granted for the reason, that after the case had
been given to the jury and they had retired to make up their
verdict, the jury, without leave of the Court, and without the
knowledge or consent of the plaintiff, separated and dispersed
themselves, and whilst so dispersed partook of refreshments
and remained so dispersed and separated, conversing with
other persons, for the space of one hour.

The jury had been allowed to separate without objection
during the trial of the cause at previous adjournments of the
Court. There was no evidence that the jury had been tam-
pered with during their separation. The Court granted the
new trial on the ground of their separation, from which judg-
ment the defendant appealed.

*Malone*, with whom was *Bailey & McCorkle*, filed the fol-
lowing brief:

1. The defendant in this case appeals from the judgment of the Court in granting a *venire de novo,* or new trial, under sec. 299, C. C. P.

2. The action of the Court, in granting a new trial, must involve matter of "law or legal inference." *Vest* v. *Cooper,* 68 N. C. 131 ; *Love* v. *Moody,* 68 N. C. 200.

3. "*Every decision* implies the finding of a state of facts, and the conclusion of law upon it." *State* v. *Prince,* Phillips (June Term,) 1869, p. 533.

4. In this case the Judge finds a state of facts, hence the conclusion must be a "legal inference;" it would be otherwise if he had found no facts, but simply granted a new trial for some *discretionary* cause without stating the facts from which he drew a conclusion. But the facts should in all cases be found by the Judge below.

5. The effect of sec. 299 of C. C. P. is to *enlarge* the supervisory power of this Court over the granting or refusing to grant new trials, as the discretionary power of the Courts has been the source of much abuse and wrong in the administration of justice. See dissenting opinion of Judge GASTON in the case, *State* v. *Miller,* 1 Dev. and Battle, 516–540. On page 540 he says: "This discretion, it is oppressive to the Judge, dangerous to the community and at variance with the settled principles of our law." See *Platt* v. *Monroe,* 34 Barbour, 291.

6. And especially should the *discretion* be controlled within legitimate bounds when the discretion is exercised against the party having a verdict of the jury in his favor. The reason that much discretion is allowed in the *refusal* to grant *new trials* is because the verdict of the jury stands to *forbid an interference* except for a well defined cause. Heretofore no appeal has been allowed to the party against whom the new trial is granted. (Every intendment and presumption in favor of the verdict.) *Honeycutt* v. *Angel,* 4 D. & B. 306.

7. But the principal reason for this discretion in the refusal to grant new trials, is because the Court cannot always see the

facts as presented to the Court below ; but in this case all the facts are found and the Court *here* can see the case precisely as Court below. This distinguishes the class of cases.

8. In all the cases where the *discretionary* power over new trials is exercised in case of separation of the jury, the Court finds some act of *tampering* which is expressly *negatived* in this case.

9. The Judge having made the facts a part of the record, and having drawn the legal conclusion, the *legal result* is to declare the *verdict void*, and that he would have been compelled, by law, to disregard the verdict under the circumstances, *had it gone either way.*

10. And it is well settled that the separation of the jury does not render the verdict void. The doctrine is fully discussed in *State* v. *Miller*, 1 Dev. & Bat. 500 ; 2 Battle's Digest, 817.

We respectfully refer also to the following authorities : *State* v. *Sparrow*, 3 Murp. 487 ; *State* v. *Lyttle*, 5 Ired. 58 ; *State* v. *Godwin*, 5 Ired. 401 ; *Adams* v. *People*, 47 Illinois 376 ; *State Braenen*, 45 Mo. 329 ; *Stephens* v. *People*, 19 N. Y. 547 ; *Davis* v. *State*, 15 Ohio, 72 ; *King* v. *Wolfe*, 1 Chitty's Rep. 401 ; *Hilliard, N T.*, 798 *note ; Evans* v. *Foss*, 49 N. H. 490 at 497 bottom ; *Powell* v. *Jopling*, 2 Jones, 400 ; Powell on App. Proceedings, pp. 195 *et seq.*

*Folk & Armfield,* contra.

There is a marked distinction between awarding a new *venire* because the verdict is bad and setting a verdict aside and granting a new trial. The former must be for matters apparent on the record and is of right. The latter may be for matter not appearing on the record, and is addressed to the sound discretion of the Court. The former is matter of error, and must be noticed by the appellate court ; the latter has heretofore been considered not matter of error, or elsewhere examinable. (Chief Justice WILLS, *Wytham* v. *Lewis*, 1 Wilson, 55.) It is not necessary to ascertain to which of the above stated principles the present case belongs, or discuss the point stated by

READE, J., in *Love* v. *Moody*, 68 N. C., p. 200; for the following proposition is clearly sustained by reason and authority, (viz.): If the jury, after they are directed to retire and consider of their verdict without any necessity therefor, and without the leave of the Court, disperse and go at large, the Judge in the exercise of his discretion may set the verdict aside and grant a new trial, unless the suspicion arising from such misconduct is removed by affidavit or otherwise. The only exception admitted to this proposition is where the jury disperse from necessity, and this exception seems very ancient. In *King* v. *Mozely*, 1 Chitty, 401, 2d Barnwell and Alderson, there is a note by the reporter of a case decided in the Exchequer Chamber between the *Bishop of N.* and the *Earl of Kent*, the jurors were chosen, tried and sworn, and whilst the parties were giving their evidence, there come such a storm of thunder and rain, that some of the jury departed without leave of the Court; and after several arguments and adjournments it was held by four Judges against three, that the verdict was good, for they had a reasonable ground for departing, because of the storm, (it seems they stood in the open street.) Bro. Abr. verdict, p. 19. In Bro. Abr., title Jurors, p. 13, it is said that the jurors may separate by reason of a great tempest, or affray, or the falling of the house, and the same law is of a fire in the house. For the cause of the dispersion prevents suspicion of any misconduct. But where the jury disperse without necessity or leave of the Court, the authorities are uniform to sustain the position that their verdict ought not to stand. Lord Coke lays it down as a fundamental rule that by the law of England, a jury, after the evidence given upon the issue, ought to be kept together in some convenient place, without meat or drink, fire or candle, without speech to any one unless it be the bailiff, and with him only if they be agreed. Co. Lit., 227. The jury might eat and drink in view of the Judge. Com. Dig., tit. Pleader, verdict 346. This part of the rule was intended to guard rather against delay, than corruption, and was always regarded as not absolutely inflexible; but one which

might be accommodated to the circumstances of each case GASTON, J., *State* v. *Miller*, 1 Dev. & Bat., 520. But the first great purpose of the rule, the securing the jury from the possibility of improper intercourse, must ever forbid any dispensation from that part of it which requires that they shall be kept together. The law has sought by the most jealous means to procure triers above all exception who stood indifferent as they stood unsworn, and with yet more jealous care provided that they should hear no evidence but what was relevant to the precise matter in controversy, and delivered in the presence of the parties under guards, and solemnities of law. If, after all these precautions, it were to permit triers to disperse and mix with those around them, these safeguards would be demolished, triers would catch the partialities and prejudices of the friends and enemies to the parties, their ears would be open to all that might be said in relation to the subject of trial, and their decision would be the reflex of the untutored prejudices of a mob, rather than the enlightened and impartial verdict of a jury. Whatever may be the innovations made on the former part of the above rule, considerations like these have preserved the latter branch intact. In Dalt., ch. 185, it is said after evidence has been heard and the jury retire to consider of their verdict, the oath administered to the bailiff sworn to keep them, is as follows:

"You swear that you shall keep this jury without meat, drink, fire or candle. You shall suffer none to speak to them, neither shall you speak to them yourself, only to ask them whether you are agreed, so help you God."

So in Com. Dig. tit. Enquest, it is laid down that after the evidence is given, the jury ought to stay together till they agree of their verdict." If a great tempest happens, the jury may depart from the place where they are to consider of their verdict. Vin. Abr. Tit. trial G. In 4th Bla. Com., 460, it is laid down, when the evidence is closed, the jury cannot be discharged until they have given in their verdict, but are to consider of it, and deliver it with the same forms as in civil cases.

In 3 Chitty Bla. Com. p. 291, note, it is said, pending a trial of long duration, the jury may be adjourned, and in civil cases may separate, but after the Judge has summed up, they cannot separate. 2 Bat. and Adl. 462, cited. An officer of the Court ought always to be placed at the door of the box where the jury set, to prevent any one from having communication with them, and when they depart the bar they are to be attended by a bailiff sworn for that purpose. Bul. Nisi Prius, 308. In *Luster* v. *Stanley*, 3 Dag. 287, Mr. Justice LIVINGSTON, of the Supreme Court of the United States, stated to the jury that the rule of the common law required them to be kept together until they had agreed upon their verdict, and if they separated before, their verdict would be set aside. The above authorities, I think, show that the common law will uphold no verdict rendered by a jury which have dispersed without necessary cause adjudged by the Court or appearing on the record. But whether this be so or not, unless the suspicion arising from such misconduct be removed to the satisfaction of the presiding Judge, such verdict ought not to stand. Such separation necessarily leads to abuse, and it is impossible to ascertain in each case whether actual abuse has followed or not. To tamper with a jury is good cause for setting aside a verdict. The rule, to give full protection, must extend to cases where there has been great opportunity for fraud; for fraud is so Protean in its shapes, so various in its disguises, that nothing but a fixed and uniform rule of action can exclude it in every case. That rule must be, that an unauthorized and unexplained dispersion of the jury is good cause for a new trial in every case in which it occurs. It should be like the old rule of evidence, which excluded all testimony from an interested source; like the rule of equity, which will not tolerate purchases by trustees from those having the beneficial estate, not because there is abuse, but because without the rule there may be abuse which cannot be detected, and which ought not to be tolerated. If a dispersion for one hour be not sufficient to justify this action, how much longer must this dispersion continue, two, three or

five hours, or may the jury go home and return the next day and render their verdict? It is easy to see that if this irregularity be permitted, it will be the parent of another and probably greater one, which in its turn produce yet another. Thus precedents multiply, until that which was fact yesterday is the doctrine of to-day. The rule once broken, how easy the descent, how hard the return to the safety and purity of that trial, which has been, from the earliest judicial annals, considered the " strongest security to the liberties of the people which human sagacity ever devised, as well as the happiest contrivance for cherishing among all an affectionate attachment to the laws, in the administration of which they exercise so important a part." 68 N. C. R. p. 131 ; *Ibid*, 200, 272 ; 69 N. C. R. p. 469 ; 67 N. C. R. p. 18 ; *Ibid*, 41.

By the 299th section, C. C. P., page 113, an appeal only lies to the Supreme Court from an order of the Superior Court granting a new trial " *upon a matter of law or legal inference*," and this does not alter the law as it stood before the adoption of the Code, and then the action of the Judge below in granting or refusing a new trial for any matter not " of law or legal inference," was discretionary with him and could not be reversed in the Supreme Court. See *Banks* v. *Hunter*, 1 Dev. 100 ; *Lindsey* v. *Lee*, 1 Dev. 640 ; *McRea* v. *Lilley*, 1 Ired. 118 ; *Tyrell* v. *Wigins*, 1 Ired. 72 ; *Wall* v. *Hinson*, 1 Ired. 276 ; *McCulloch* v. *Doak and wife*, 68 N. C.— R. 267 ; *Long* v. *Holt*, 68 N. C. R. 53.

BYNUM, J. This is a civil action, here by appeal from an order of the Court below, setting aside a verdict for the defendant and granting a new trial upon the following state of facts, found by his Honor, to-wit: " In this case, it appearing from the affidavits, filed by plaintiff, to the satisfaction of the Court that after the testimony was all given, the argument of counsel concluded, and after the jury had been charged by the Court and directed to retire and consider of their verdict, and before they had found said verdict the said jury, without leave of the

Court and without the knowledge or consent of the plaintiff's counsel, separated and dispersed themselves, and whilst so dis-persed, partook of refreshments and remained so separate and dispersed, conversing with other persons for the space of one hour. It is therefore considered, ordered and adjudged by the Court, that their said verdict in this case be set aside and a new trial be had. Wherefore, let a jury come, &c."

Was this error in law ?

Before answering this question, it is necessary to enquire whether the granting or refusing a new trial, by the Judge below, is a matter of law, or a matter of discretion, for if it is the latter, this Court can seldom review its exercise ; if the former, the exercise of the power is always the subject of review here.

In the *State* v. *Miller*, 1 Dev. & Bat. 500, the facts were, that during the progress of the trial, the jurors retired under the charge of an officer, by permission of the Court. They all soon returned but one, who came in two minutes afterwards and excused himself by stating that he had stepped aside to obey a call of nature. The prisoner proposed to prove, and it was assumed as a fact, that the juror had gone into a grocery, near by, for a drink. The prisoner was convicted of murder and moved the Court for a new trial for misconduct in the jury, which motion was refused, and he appealed to the Su-preme Court. The judgment was there affirmed by a divided Court.

RUFFIN, C. J., in delivering the opinion of the majority, holding, that while the conduct of the juror was irregular, yet as it did not appear that he was tampered with or the prisoner prejudiced therby, the mere misconduct of the juror did not vitiate the verdict so as to render it, in law, null, but that it was a matter wholly addressed to the presiding Judge to grant or refuse a new trial.

GASTON, J, in his dissenting opinion, contended that the ver-dict was vitious, and in law void, and that the prisoner was, therefore, as a matter of right, entitled to a *venire de novo.*

For the purposes of this case, it matters not which of these eminent Judges was right, or which was wrong, for by the opinion of either or of both, the Judge, in our case, had the right to set aside the verdict and grant a new trial, the one making it a matter of law, the other a matter of discretion. If it was a question of right, as contended by GASTON, J., then the verdict *must* be set aside ; if it was a matter of discretion, as held by the *Court,* then the Judge *may* set it aside, so *quacunque via data,* the order of the Judge granting a new trial, was proper.

We are not called upon now to decide the vexed question, as to what acts of misconduct in jurors, after they are charged with a case and retire to enquire of their verdict, so vitiate their verdict as to constitute a mistrial, the legal effect of which is that it must be set aside as null and void, and a *venire de novo* awarded. That question was fully discussed and considered in Miller's case, before cited, but no conclusion was then arrived at.

The same question again came before this Court in the *State* v. *Tighlman,* 11 Ired. 573. The prisoner was convicted, and moved for a *venire de novo* for the misconduct of the jury, upon the following facts found : The jury, under the charge of an officer, was confined in the ordinary jury room from Thursday night to Saturday morning, before returning their verdict. While out, the members of the jury separated often to obey the calls of nature, though under the charge of an officer. One juror visited a drugstore, one hundred and fifty yards off, to procure medicine. He was under the charge of an officer and conversed with no one except the keeper of the drugstore, who asked him if they had agreed in their verdict, to which he replied, that "they had not." Another juror separated himself from his fellows and stood outside of the jury room with the door closed, and conversed ten or fifteen minutes, with one Richardson, privately, about what did not appear. The jurors, while out, ate and drank with permission of the Court, part of the time, and when enjoined by the

Court not to eat or drink, they violated the order, contrary to the wishes of the officer having them in charge. Several jurors wrote notes and letters and dropped them from the windows of their room, and they also received letters from persons not of the jury. The contents of the letters did not appear to the Court. Some of the jurors conversed from the windows with persons in the street on various subjects and *about this suit.* What was said did not appear. Negro servants and children of the jurors had access to the jury room, the servants to carry food and clothing, and the children to see their fathers. The Court being of opinion that the sepation and other irregularities of the jury did not vitiate the verdict, pronounced judgment of death upon the prisoner.

Upon appeal, the case was argued in behalf of the prisoner, with great learning, and all the cases reviewed. The judgment of the Court below was affirmed by a unanimous bench.

PEARSON, J., in delivering the opinion of the Court, said: "Perhaps it would have been well, had his Honor, in his discretion, set aside the verdict and given a new trial, as a rebuke to the jury, and an assertion of the principle that trials must not only be fair, but above suspicion.

"This, however, was a matter of discretion, which we have no right to reverse. Our enquiry is, was the misconduct and irregularity such as to vitiate the verdict, to make it in law null and void and *no verdict ?*

"In the consideration of this question we have had occasion to review *State* v. *Miller*, 1 Dev. & Bat., 500, and *it seems to* us that the decisions of the Court and the distinction between cause for a new trial, which is a matter of discretion, and cause for a *mistrial*, which is a matter of law, is fully sustained by authority and by reason. * * * * *

"We wish not to be understood as disclaiming a right to grant a *venire de novo*, when it is made to appear on the record that there has not been a fair trial; on the contrary, we assert that right, whether it is to be exercised for or against the prisoner. We take this plain position : If the circumstances are

such as merely put suspicion on the verdict, by showing, not that there *was*, but that there might have been undue influence brought to bear on the jury, because there was opportunity and a chance for it, it is a matter within the discretion of the presiding Judge. But if the fact be that undue influence was brought to bear on the jury, as if they were fed at the charge of the prosecutor or prisoner, or if they be solicited and advised how their verdict should be, or if they have other evidence than that which was offered on the trial, in all such cases there has, in contemplation of law, been no trial; and this Court will, as a matter of law, direct a trial to be had, whether the former proceeding purports to have acquitted or convicted the prisoner."

If, therefore, two decisions of this Court, after full argument and mature consideration, can settle this question, it must be considered at rest in this State.

In the last case, the dividing line between matter of discretion which this Court cannot revise, and matter of law, which it can review, is as clearly and distinctly drawn as the nature of such cases will permit, and sufficiently so for all practical purposes.

That line of distinction is, that to vitiate and avoid a verdict, it must appear upon the record that undue influence was brought to bear on the jury. All other circumstances of sus picion address themselves exclusively to the discretion of the presiding Judge, in granting or refusing a new trial. He is clothed with this power because of his learning and integrity, and of the superior knowledge which his presence at and participation in the trial gives him over any other forum. However great and responsible this power, the law intends that the Judge will exercise it to further the ends of justice, and though doubtless, it is occasionally abused, it would be difficult to fix upon a safer tribunal for the exercise of this discretionary power, which must be lodged somewhere.

Our case is favorably distinguished from the cases of *Miller* and *Tilghman*, in that, there new trials were refused and the

31

prisoners were executed, while here a new trial was granted, and the only inconvenience seen is the trivial one of a short postponement of the case. If the defendant has merits, he need not fear a second trial, if he has none, the new trial is granted in the interests of justice.

By C. C. P., sec. 299, an appeal is allowed as well from an order granting as refusing a new trial, but in either case, the matter appealed from must be "of law or legal inference." Heretofore it has been the practice of Superior Courts, in granting new trials, not to put upon record the facts or reasons moving them thereto, and we know of no rule of law requiring it to be done. But now, to give parties the benefit of the above section of the Code, the Courts should, and no doubt will, on exceptions taken by the parties aggrieved, put upon the record the matters inducing the order granting as well as refusing a new trial. The appellate Court can thus see whether the order presents a matter of law which is the subject of review, or matter of discretion, which is not. In this way only, it is conceived, can the full benefit of that provision of the Code be secured to suitors. However, no difficulty of that kind arises here, for the facts upon which the new trial is granted appear upon the record, and it thereby plainly appears that the Judge exercised a discretionary power only, which this Court cannot revise, and if it could, would say was properly exercised in this case. *Exchange Bank of Columbia* v. *Tiddy et al*, 67 N. C. R. 169 ; *Love* v. *Moody*, 68 N. C. R. 200; *Vest* v. *Cooper*, 68 N. C. R. 131.

Per Curiam.                                    Judgment affirmed.