GORDON SULLY KEENER v. LEWIS EDGAR BEAL.

(Filed 22 May, 1957.)

**1. Trial § 22b—**

On motion to nonsuit, defendant's evidence may be considered only in so far as it is not inconsistent with, but tends to clarify or explain, plaintiff's evidence, and defendant's evidence which tends to establish another and different state of facts or which tends to contradict or impeach plaintiff's evidence is not to be considered.

**2. Automobiles § 41e—Evidence held sufficient for jury on issue of negligence in permitting car to stand on highway without lights.**

Plaintiff's evidence was to the effect that he struck the rear of defendant's car, which was standing at nighttime without lights on the hard surface in his lane of travel. Defendant's evidence was to the effect that his car stalled as he was entering the highway from a private road on an uphill grade, that instead of pushing the car back off the highway, he pushed it onto the highway in an attempt to start it, that he cut off his lights to save the battery, and that when he saw plaintiff's car approaching from the rear, he got in his car and turned on the lights, just before the impact. *Held:* Plaintiff's evidence, with so much of defendant's testimony as is favorable to plaintiff, suffices to make out a case of actionable negligence against the defendant.

**3. Negligence § 19c—**

Nonsuit on the ground of contributory negligence will be granted only when the plaintiff's own evidence establishes the facts necessary to show contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom.

**4. Same—**

If different inferences may be drawn on the issue of contributory negligence from plaintiff's own evidence, some favorable to plaintiff and others to the defendant, the issue is for the jury to determine, since contradictions and discrepancies in the evidence are for the jury to resolve.

**5. Automobiles § 42a—**

A motorist is under duty to exercise ordinary care for his own safety, and his negligence in failing to do so bars recovery by him if it contributes to his injury as a proximate cause or one of them.

6. **Automobiles § 42d—Evidence held not to show contributory negligence as a matter of law in hitting unlighted vehicle standing on highway.**

Plaintiff's evidence tended to show that upon meeting another vehicle traveling in the opposite direction at nighttime, he tilted the beams of his head lamps downward as required by statute, G.S. 20-131(d), that after this car passed, he saw defendant's car in front of him without lights some 25 feet away, attempted to pass to the right on the shoulder of the road, but was unable to avoid colliding with defendant's car. There was other evidence tending to show that plaintiff's car left skid marks some 27 feet in length, and that his head lights had been checked and were in good condition. *Held:* Conflicting inferences may be drawn from the evidence as to whether plaintiff was driving with lights that failed to comply with the statutory requirements, and therefore nonsuit on the ground of contributory negligence in this respect was properly denied.

7. **Automobiles § 7—**

It is the duty of a motorist not merely to look but to keep a lookout in the direction of travel, and he is held to the duty of seeing what he ought to have seen.

8. **Same—**

A motorist is not bound to anticipate negligent acts or omissions on the part of others, but, in the absence of anything which gives notice to the contrary, is entitled to assume and act upon the assumption that every other motorist will perform his duty and obey the law and will not expose him to danger which can come to him only by the violation of duty or law by such other motorist.

9. **Automobiles § 10—**

A motorist has the right to assume and act upon the assumption that no other motorist will have his automobile standing upon the paved portion of a highway in the nighttime without lights in violation of statute. G.S. 20-134. G.S. 20-161.

10. **Automobile § 42d—Evidence held not to show as matter of law contributory negligence in failing to keep proper lookout.**

Plaintiff's evidence tended to show that defendant's car was standing on the highway in plaintiff's lane of travel a distance of some 175 feet from where plaintiff passed another car traveling in the opposite direction at nighttime, and that plaintiff had tilted the beam of his head lights downward as required by statute in passing such other car. There was conflict in the evidence as to the distance plaintiff first saw defendant's car. *Held:* Plaintiff's evidence taken in the light most favorable to him permits conflicting inferences to be drawn as to whether plaintiff was keeping the requisite lookout, and therefore nonsuit on the ground of contributory negligence in this respect was properly denied.

11. **Trial § 52—**

The trial court has the discretionary power to discharge a juror and order a mistrial when necessary to attain the ends of justice.

**12. Trial § 48—**

Defendant moved for a mistrial on the ground that during the trial an officer had talked to two of the jurors in regard to the case. The trial judge interrogated the jurors, and upon their statements that they recalled talking to the officer, but that they had no recollection of anything he had said about the case in such conversation, concluded that neither party had been prejudiced, and denied the motion in his discretion. *Held:* The record does not disclose facts requiring an order of mistrial as a matter of law, or show abuse of discretion by the trial judge in the discretionary denial of the motion.

**13. Appeal and Error § 42—**

Where the charge, read as a composite whole, is free from prejudicial error, an exception to the charge cannot be sustained.

**14. Appeal and Error § 40—**

A new trial will not be awarded for mere technical error, but the burden is upon appellant to show error which is prejudicial in amounting to the denial of some substantial right.

APPEAL by defendant from *Campbell, J.,* September Civil Term 1956 of LINCOLN.

Civil action to recover damages for alleged personal injuries and destruction of an automobile tried upon the usual issues of negligence, contributory negligence and damages, which resulted in a verdict and judgment for the plaintiff.

Defendant appeals.

*Carpenter & Webb for Defendant, Appellant.*
*Sheldon M. Roper and John H. Small for Plaintiff, Appellee.*

PARKER, J.  The defendant offered evidence. He assigns as error the refusal of the court to allow his motion for judgment of nonsuit made at the close of all the evidence. G.S. 1-183; *White v. Lacey,* 245 N.C. 364, 96 S.E. 2d 1. The defendant in his brief contends that plaintiff should have been nonsuited on the ground of contributory negligence, for the reason that plaintiff failed to keep a proper lookout, and "was operating his automobile in the nighttime with headlights which were markedly below the statutory standard." The defendant says in his brief he has not argued the absence of negligence on the part of the defendant, though "that clearly appears from the record." Defendant has selected contributory negligence as the ground upon which to wage battle.

Plaintiff's evidence tends to show the following facts: About 9:40 p.m. on 17 January 1956, a clear night, he was driving his Chevrolet automobile on State Highway 27 in the direction of Lincolnton. He

had attended a meeting in Charlotte, and was returning to his home north of that town. His automobile was in good shape: its brakes were in good order. About 60 days before, his lights had been adjusted. He checked his lights, when he left Charlotte, and they were all burning. The lights were "in number one condition."

The speed limit for the part of the highway at the scene of the collision was 55 miles an hour. Plaintiff was driving 45 miles an hour on his right-hand side of the road. Just before he reached the top of a grade, he passed two automobiles. It is one-tenth of a mile from the top of the grade or hill to the scene of the accident, according to a measurement made by plaintiff's witness, Corporal Dave Houston of the State Highway Patrol. When he reached the top of the grade, he was meeting another automobile, whose driver blinked its lights. These lights made such a gleam, he blinked his lights several times to notify this driver he was still on low beam. After that automobile passed, he noticed a black automobile up in his lane of the road in the center. This automobile was "dead still" without any lights on it. He was 25 feet away from this automobile in front of him at the time he saw it. He testified: "Well, to my left, I saw the lights from another car coming from Lincolnton, coming around the curve. Well, I had to do something quick, and I made a pass for the field, on the shoulder of the road. I passed to my right and my left front wheel hooked this car's left-hind wheel. My front wheel hit this car's right-hind wheel." He also testified the distance from where he passed the last automobile to the collision was "from here to the next block."

When the automobiles collided, plaintiff was thrown into the steering wheel and windshield and out of his automobile into a side ditch. He sustained severe injuries, and his automobile was destroyed. A crowd of people soon gathered. Plaintiff called for help, and the crowd moved to where he was lying behind his automobile. He asked, "whose car was that up in the road without any lights?" The defendant Beal replied, "it was my car." He then asked the defendant what he was doing in the road without any lights. The defendant replied, "my battery was dead, and my lights would not burn, and we pushed it out, trying to get it started." Defendant did not say where he pushed it from. Plaintiff said, "don't ever do that again." Defendant replied, "I am sorry, I won't."

On cross-examination of plaintiff testimony tending to show these facts was elicited: His car was in good shape. He had had his headlights checked several times to see that they were in right focus. He could tell they were working all right as he was driving along the road from Charlotte. Defendant's automobile had two taillights on the rear, but they were not burning. These taillights had red glass, and were of the regular reflector type taillights. His headlights did not make

any reflection to his eyes. He could just see a gleam, and no lights burning. His lights were adjusted so they did not shine on the automobile until he was 25 feet away from it. About that time there was another car coming around the curve at what had been referred to as the north end of the highway. A few seconds or a minute after putting his automobile on low beam, the collision occurred.

Corporal Dave Houston had a conversation with the defendant at the scene of the collision. The defendant told Corporal Houston he and his wife had been visiting in Mrs. Jones' home, which is 150 feet off the road. Her driveway is south of the scene of the collision. He said he had a dead battery, and he pushed his automobile from the Jones' home, and had pushed it down the road about the length of a car on the paved portion of the highway. He did not have his lights on. He saw a car coming over the hill, reached in his car, turned the lights on, and just as he did the car hit him in the rear.

Corporal Houston described marks on the highway at the scene. He testified, "as to whether I found any skid marks from this point" (the point of impact) "toward Charlotte, I believe that is a 27 foot skid mark, but the last mark is right on the point of impact." He said it was possible to stop a standard width automobile on the shoulder and off the highway where the collision occurred. The shoulder of the road where plaintiff's car came to rest is 10 feet or more wide. On cross-examination Corporal Houston testified: "I went back out there and measured on that night from where my lights would shine on the automobile and where my lights would fall down on the cars where this accident happened, where the marks of the impact was 600 feet."

Defendant's evidence presents these facts: He had been visiting his sister-in-law. During the visit his car was parked in her driveway. He left about 9:30 p.m. He testified as follows:

> "I went out to the car and was starting it up, it was pretty slow and sluggish, and we drove the car on up to the pavement and it stopped, it stalled. That was the distance of approximately 100 or 150 feet. It is an uphill grade to the highway.
>
> "When the automobile stalled, the front end of the automobile was on the highway and the back end was on the road going into the driveway. It was partly on and partly off. The front of my car was just a little back from the center line, just a little east of the center line. The car was sitting on a 45 degree angle. The highway in the direction of the airport grill was slightly downgrade.
>
> "When my car stalled, I tried to start it, two or three times, and one time when I hit the starter, the lights went completely out, so I knew the battery was pretty weak, or about gone. I released my

foot from the starter and the lights came back on. At that time my lights were on full beam. They were bright and shining approximately 200 feet."

On cross-examination defendant testified that his engine stalled, and "from then on the battery was dead, it would not turn, it would not start the car. It was so weak that I turned my lights off to save the battery." He tried to start his car two or three times without success. He knew his battery was weak or about gone. He told his wife to hold the steering wheel so he could push. He began pushing the car. His wife said she saw lights coming from the rear. He got in his car, turned on the lights and closed the door. He then looked in the rear-view mirror to see if there was an oncoming car, his wife screamed, and in about five seconds the car hit his car. Defendant testified his car was green, chrome trimmed, the taillights had chrome and were of the reflector type, and there was scotch-light on the bumper, which reflected red and yellow. He said it may have been 8 or 10 minutes from the time his car stalled until the collision.

We have not stated all of the defendant's evidence for the very simple reason that "in ruling upon a motion for an involuntary judgment of nonsuit under the statute after all the evidence on both sides is in, the court may consider so much of the defendant's testimony as is favorable to the plaintiff or tends to clarify or explain evidence offered by the plaintiff not inconsistent therewith; but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by the plaintiff." *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

Accepting plaintiff's evidence as true, and considering it with the liberality that we are required to do on a motion for judgment of involuntary nonsuit, it is clear that plaintiff's evidence, and so much of the defendant's testimony as is favorable to him, suffices to make out a case of actionable negligence against the defendant.

It is well settled law in this jurisdiction that a motion for judgment of nonsuit on the ground of contributory negligence will be granted only when the plaintiff's own evidence establishes the facts necessary to show contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom. *Mallette v. Cleaners, Inc.,* 245 N.C. 652 97 S.E. 2d 245; *Blevins v. France,* 244 N.C. 334, 93 S.E. 2d 549; *Bundy v. Powell, supra.* To allow an involuntary nonsuit on the ground of contributory negligence, the plaintiff must have proved himself out of court. *Barlow v. Bus Lines,* 229 N.C. 382, 49 S.E. 2d 793; *Phillips v. Nessmith,* 226 N.C. 173, 37 S.E. 2d 178; *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601.

"Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court." *Barlow v. Bus Lines, supra.* If different inferences may be drawn from the evidence on the issue of contributory negligence, some favorable to plaintiff and others to the defendant, it is a case for the jury to determine. *Gilreath v. Silverman,* 245 N.C. 51, 95 S.E. 2d 107.

The law charges a nocturnal motorist, as it does every other person, with the duty of exercising ordinary care for his own safety. *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276. A plaintiff's negligence suffices to bar recovery, if it contributes to his injury as a proximate cause, or one of them. *Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396.

G.S. 20-141(e) provides that "the failure or inability of a motor vehicle operator who is operating such vehicle within the maximum speed limits prescribed by G.S. 20-141(b) to stop such vehicle within the radius of the lights thereof or within the range of his vision shall not be considered . . . contributory negligence *per se* in any civil action, etc." Defendant says in his brief his position is, this statute has nothing to do with the determination of the case, because he does not contend plaintiff was travelling at a speed which made it impossible for him to stop his automobile within the radius of proper headlights. Defendant states he does contend that plaintiff failed to keep a proper lookout and was driving with improper lights.

Plaintiff testified: "When I was on the top of the grade, I was meeting another car and he blinked his lights and the lights made such a gleam that I blinked my lights several times to let him know I was still on low beam and after that car passed, I noticed a black car up in my lane of the road in the center." G.S. 20-181 provides: "Any person operating a motor vehicle on the highways of this State, who shall fail to shift, depress, deflect, tilt or dim the beams of the head lamps thereon whenever another vehicle is met on such highway . . . shall, upon conviction thereof," be fined or imprisoned. Plaintiff in driving his car with his lights on low beam, when he was meeting this car, was acting in obedience to this statute.

G.S. 20-131(a) provides: "The head lamps of motor vehicles shall be so constructed, arranged, and adjusted that . . . (the exception set forth in subsection (c) is not applicable here) they will at all times mentioned in Section 20-129 (period from a half hour after sunset to a half hour before sunrise, etc.), and under normal atmospheric conditions and on a level road, produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but any person operating a motor vehicle upon the highways, when meeting another vehicle, shall so control the lights of the vehicle operated by him by shifting, depressing, deflecting, tilting, or dimming the headlight beams

in such manner as shall not project a glaring or dazzling light to persons within a distance of 500 feet in front of such head lamp."

G.S. 20-131 (d) provides: "Whenever a motor vehicle meets another vehicle on any highway it shall be permissible to tilt the beams of the head lamps downward . . . subject to the requirement that the tilted head lamps . . . shall give a sufficient illumination under normal atmospheric conditions and on a level road to render clearly discernible a person seventy-five feet ahead, but shall not project a glaring or dazzling light to persons in front of the vehicle."

Defendant contends that plaintiff testified that his lights were so adjusted that they did not shine on defendant's automobile until he was 25 feet away from it, and that this is an admission on his part that he was driving his automobile with lights which did not comply with the statutory requirements.

Plaintiff also testified his lights had been adjusted about 60 days before. He checked his lights, when he left Charlotte, and they were all burning. His lights were "in number one condition." On cross-examination he said he had had his headlights checked several times to see that they were in right focus. He could tell they were all right as he was driving along the road from Charlotte. The 27 feet skid mark, testified to by Corporal Houston, would seem to permit the inference that it was made by plaintiff's automobile and that plaintiff had seen defendant's car 27 feet or more away. It is reasonable to infer that the skid marks were made by plaintiff's application of his brakes, and that his seeing defendant's car, when he was travelling 45 miles an hour, and his application of brakes were not instantaneous.

Different inferences may be drawn from plaintiff's testimony as to his lights, some favorable to plaintiff and others to the defendant. Therefore, it was a matter for the jury to determine whether or not plaintiff was driving his automobile with lights, which did not comply with the statutory requirements.

In *Wall v. Bain*, 222 N.C. 375, 23 S.E. 2d 330, this Court said: "It is the duty of the driver of a motor vehicle not merely to *look*, but to *keep an outlook* in the direction of travel, and he is held to the duty of seeing what he ought to have seen."

This Court said in *Chaffin v. Brame, supra:* "It is a well established principle in the law of negligence that a person is not bound to anticipate negligent acts or omissions on the part of others; but in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him only from the violation of duty or law by such other person. *Gaskins v. Kelly*, 228 N.C. 697, 47 S.E. 2d 34; *Cummins v. Fruit Co.*, 225 N.C. 625, 36 S.E. 2d 11; *Hobbs*

v. Coach Co., 225 N.C. 323, 34 S.E. 2d 211; Cab Co. v. Sanders, 223 N.C. 626, 27 S.E. 2d 631; Tarrant v. Bottling Co., 221 N.C. 390, 20 S.E. 2d 565; Murray v. R. R., 218 N.C. 392, 11 S.E. 2d 326; Hancock v. Wilson, 211 N.C. 129, 189 S.E. 631; Jones v. Bagwell, 207 N.C. 378, 177 S.E. 170; Shirley v. Ayers, 201 N.C. 51, 158 S.E. 840; Wilkinson v. R. R., 174 N.C. 761, 94 S.E. 521; Wyatt v. R. R., 156 N.C. 307, 72 S.E. 383."

As plaintiff was driving his automobile on the highway at night, he had the right to act upon the following assumption, until he saw, or in the exercise of due care should have seen defendant's automobile, that no motorist would have his automobile standing upon the paved portion of a highway in the nighttime without lights showing, where the speed limit was 55 miles an hour, in violation of G.S. 20-134 and G.S. 20-161. White v. Lacey, supra; Weavil v. Myers, 243 N.C. 386, 90 S.E. 2d 733.

Defendant testified that when his automobile stalled, the front end of the automobile was on the highway and the back end was on the road going into the driveway: it was an uphill grade to the highway. It is plain that it was practicable for defendant to have pushed his car off the highway and back down the driveway of Mrs. Jones, but instead of doing so, he began pushing it in the highway.

Plaintiff said the distance from where he passed the last driver to the scene of the collision was "from here to the next block." It seems clear that the words "from here" refer to the chair where he was sitting. He later testified this distance was 175 feet. When a motorist at night is meeting and passing automobiles, it is not easy in the first few seconds after passing an automobile to see an unlighted vehicle some distance ahead standing still. When plaintiff's evidence is taken in the light most favorable to him, different inferences may be drawn from it as to whether he was keeping the requisite lookout, and, therefore, it was for the determination of the jury and not the judge.

In Tyson v. Ford, 228 N.C. 778, 47 S.E. 2d 251, and in McClamrock v. Packing Co., 238 N.C. 648, 78 S.E. 2d 749, will be found a list of cases of this type in which contributory negligence was held as a matter of law to bar recovery, and a second list in which contributory negligence has been held to be an issue for a jury. In Cole v. Koonce, 214 N.C. 188, 198 S.E. 637, a similar type case, the Court said: "Practically every case must 'stand on its own bottom.'" In this case the plaintiff's own evidence does not establish the facts necessary to show contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom. The trial judge properly submitted the case to the jury.

During the trial and before plaintiff had finished testifying, Corporal Dave Houston informed the judge and counsel for both parties that prior to the convening of court one day, he made a remark in the presence of two people, who, as he found out later, were on the jury, that

"this is just a fight between two insurance companies." The judge talked with jurors Wilborn and Cook. Each of them, according to the record dictated by the trial judge, said: "They remembered seeing Corporal Houston prior to the convening of court, and had kidded with him about one or two matters, but that they did not recall anything had been stated pertaining to the case which was being tried, and that they had no independent recollection of anything being said about the case at all, other than what they had heard from witnesses."

The defendant in apt time requested the court to withdraw a juror and declare a mistrial. The court being of the opinion that neither side has been prejudiced by the remark made by Corporal Houston, which may or may not have been heard by the two jurors, denied the motion in its discretion. Defendant excepted, and assigns this as error.

It is well settled that in all civil cases the court may discharge a juror and order a mistrial when it is necessary to attain the ends of justice. Ordinarily, it is a matter resting in the sound discretion of the Trial Judge. *S. v. Tyson*, 138 N.C. 627, 50 S.E. 456.

In McIntosh North Carolina Practice and Procedure, 2d Ed., Vol. 2, p. 67, it is said: "Any misconduct of the jurors or of others which may influence them in finding a verdict may be considered as operating to cause a mistrial or to set aside the verdict; but the rule is the same as stated above in regard to separation. Where the circumstances are such as merely to give rise to a suspicion that there may have been improper influence, the Judge may in his discretion order a mistrial or set aside the verdict, and where there was such influence he should do so as a matter of law. What is such misconduct must depend to a great extent upon the circumstances of each case." The text is supported by our cited cases beginning with *S. v. Tilghman*, 33 N.C. 513, and including *Lewis v. Fountain*, 168 N.C. 277, 84 S.E. 278; *Baker v. Brown*, 151 N.C. 12, 65 S.E. 520, and other cases cited in the opinions in those cases.

The Trial Judge is clothed with this power of discretion, "because of his learning and integrity, and of the superior knowledge which his presence at and participation in the trial gives him over any other forum. However great and responsible this power, the law intends that the Judge will exercise it to further the ends of justice, and though, doubtless it is occasionally abused, it would be difficult to fix upon a safer tribunal for the exercise of this discretionary power, which must be lodged somewhere." *Moore v. Edmiston*, 70 N.C. 471.

Upon the facts in the record it is our opinion that the Judge was not required as a matter of law to order a mistrial, and that no abuse of discretion on his part appears. This assignment of error is overruled.

A charge to a jury must be read and considered in its entirety and not in detached fragments. *Vincent v. Woody*, 238 N.C. 118, 76 S.E. 2d 356. When the charge here is read as a composite whole, it clearly

appears that the case was presented to the jury in such manner as to leave no reasonable cause to believe that it was misled or misinformed in respect thereto. The assignments of error to the charge present no new questions of law, and it would serve no useful purpose to discuss them *seriatim,* and repeat what we have said in many decisions.

Technical error is not sufficient to disturb a verdict and judgment. The burden is on appellant to show prejudicial error amounting to the denial of some substantial right. *Johnson v. Heath,* 240 N.C. 255, 81 S.E. 2d 657. This he has not done. All defendant's assignments of error have been considered, and are overruled.

No error.