RICHARD F. APEL v. QUEEN CITY COACH COMPANY, A CORPORATION, D/B/A QUEEN CITY TRAILWAYS, AND FRANK VERNON WHITE.

(Filed 13 April, 1966.)

**1. Automobiles § 41f—**

Evidence tending to show that defendant's bus was traveling some 50 miles per hour on a highway covered with ice and snow, that plaintiff observed the bus for a distance of some 449 feet in his rear view mirror, that plaintiff pulled as far to the right as the snow bank, thrown up by a highway scraper, would permit, and that the bus struck the rear of plaintiff's vehicle, resulting in damage to the vehicle and personal injury to plaintiff, *held* sufficient to be submitted to the jury on the issue of negligence, and defendant's motions to nonsuit and to set aside the verdict as being contrary to the greater weight of the evidence on that issue were properly denied.

**2. Evidence § 51—**

The admission in evidence of a categorical affirmative by plaintiff's expert that the injuries which the evidence tended to show plaintiff suffered in the accident caused the fecal incontinence from traumatic neurosis experienced by plaintiff after the accident, *held* not error, it appearing that defendant brought out the testimony on cross-examination of the witness and that defendant's expert was permitted to testify that in his opinion the accident could not have caused the condition.

**3. Evidence § 44—**

It is competent for a medical expert to express his opinion as to the cause of a physical condition based upon proper hypothetical question assuming facts supported by evidence.

**4. Trial § 16—**

Where the court immediately sustains a motion to strike an answer of a witness and cautions the jury not to consider it, it will be assumed that the jury heeded the caution and that any prejudicial effect was thus removed.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Pless, J.,* October 25, 1965, Schedule A Civil Session, MECKLENBURG Superior Court.

The plaintiff instituted this civil action in Watauga County to recover for the personal injuries and the property damages he sustained when the GMC passenger bus, owned by the corporate defendant and operated by the individual defendant, crashed into the rear of his 1960 Oldsmobile as both vehicles were proceeding south on U. S. Highway No. 221 near Blowing Rock. According to the plaintiff's allegations and evidence, the collision occurred about 1:30 p.m. on March 6, 1962. The highway was covered with snow and ice. The bus was not equipped either with chains or snow tires so that the driver could maintain adequate control. The driver operated the heavy vehicle at a dangerous and reckless rate of speed under existing road conditions, failed to maintain a proper lookout, followed too closely behind plaintiff's Oldsmobile, and negligently rammed it from the rear, damaging the vehicle to the extent of $1,300.00 and inflicting serious and permanent injuries on the plaintiff. Among the physical injuries resulting from the collision, the plaintiff suffered a fracture of the 7th cervical vertebrae, a fracture of the collarbone, much damage to the muscles and nerves of the neck, shoulders, and back. Additional consequential injuries and damages are set out in paragraph 16 of the complaint:

"16. As a direct and proximate result of the negligence of the defendants as herein alleged, the plaintiff sustained an injury to his low back that aggravated a condition that had resulted from surgery to his low back in 1944 and from which condition the plaintiff had been a symptomatic for more than 19 years; that this aggravation of said condition necessitated a surgical operation to his low back and further resulted in fecal incontinence to this plaintiff and as a result of this incontinence the plaintiff has no sensation of impending bowel movement and has no control over his elimination process. It is therefore necessary for him to wear a "diaper-like" pad at all times and often he will have a bowel movement without realizing it until he has removed the diaper-type pad. This condition has caused the plaintiff pain, discomfort, embarrassment and complete humiliation on occasions and as the plaintiff is informed and believes and, upon such information and belief alleges, this condition is now permanent in nature and will continue to cause the plaintiff said discomfort, embarrassment and humiliation in the future. He further alleges that this condition has inter-

fered with his earning capacity and will continue to interfere with his earning capacity for the remainder of his life."

The defendants, by answer, denied negligence, alleged that the weather and the road conditions, snow and ice, etc., and blowing snow in the air made travel hazardous; that notwithstanding these conditions the regulatory agencies of both the State and Federal governments required the defendants to meet the bus schedule; that plaintiff was in a place of safety and voluntarily entered the highway and assumed the dangers incident to travel thereon during the blizzard; that his negligence in leaving a place of safety for a place of hazard was one of the proximate causes of the accident and injury; that the plaintiff was guilty of contributory negligence in entering the main highway from a side road without ascertaining the movement could be made in safety, did not keep a proper lookout and did not keep his vehicle under proper control; and that these negligent acts contributed to his injury.

Upon defendants' motion, the cause was removed to, and tried in, Mecklenburg County. Both parties introduced evidence, including testimony of medical experts. The court overruled motions for nonsuit, refused to give the special instructions requested by the defendants, and submitted issues of defendants' negligence in causing the injury and the plaintiff's damages. The jury found the plaintiff was injured and his property damaged by the negligence of the defendants and fixed his award at a very substantial amount. From the judgment in accordance with the verdict, the defendants appealed, assigning errors.

*Haynes, Graham, Bernstein & Baucom by William E. Graham, Jr., for plaintiff appellee.*

*Charles T. Myers, John F. Ray for defendant appellants.*

HIGGINS, J. The defendants made timely motions to nonsuit and to set aside the verdict as being contrary to the greater weight of the evidence. These motions involved the same legal questions. *Martin v. Underhill*, 265 N.C. 669, 144 S.E. 2d 872. They were properly denied. In fact, neither in their brief nor on the oral argument do the defendants seriously challenge the sufficiency of the evidence to go to the jury on issues of negligence and some injury. However, they do seriously contend the plaintiff's evidence with respect to the consequential damages charged in paragraph 16 of the complaint was insufficient to show such condition was proximately caused by the accident of March 6, 1962; or that the evidence offered was properly admissible on that issue. The court

admitted the evidence over objection, and refused the defendants' written request to charge the jury not to consider it.

According to the plaintiff's evidence, he was driving south on Highway 221 at 1:30 in the daytime. Snow had been falling all day. Just before the accident, he met and passed the snow scraper going north on the highway. In his rearview mirror he saw the defendant's bus following him at a speed he estimated to be 50 miles per hour. He pulled as far to the right as the snow bank left by the scraper would permit. The bus struck the rear of his automobile. He testified as to the violence of the impact, his serious physical injuries and his suffering resulting directly from them. He introduced medical testimony of current injuries. Over defendants' objection, the court permitted the plaintiff's medical expert witnesses to testify in response to a hypothetical question that the loss of control over his elimination process "could" or "might" have resulted from the injury sustained in the March 6, 1962, accident.

The plaintiff admitted that he had undergone surgery for the removal of a malignant growth from his lower spinal cord in the year 1944. However, prior to the accident on March 6, 1962, he had not suffered any fecal incontinence, but in June thereafter the condition developed which he thought at the time was diarrhea but which got worse as time went on until he consulted Dr. Scheinberg who diagnosed his ailment and sent him to Dr. Ehlert who performed an exploratory operation on the lower spine in April, 1963. Both Dr. Scheinberg and Dr. Ehlert diagnosed the plaintiff's incontinency as resulting from the atrophy of the nerves and muscles of the lower body. They suspected that the growth (removed in 1944) had redeveloped, had become active, and was causing the atrophy. However, the exploratory operation proved negative.

On cross-examination, Dr. Scheinberg testified:

> "The accident occurred and he began to have incontinency and difficulty with his right leg. And it's for that reason that I believe there is a relationship. As to whether just any kind of accident could have brought this on, I don't know about any kind of accident. I am asked to give my answer, assuming these facts to be true, do I have an opinion as to whether there was a relationship, and my answer was yes. . . . As to whether it's my opinion that the injury to the neck and injury to the shoulder could have brought on the fecal incontinence, I don't see how one could come to any other conclusion. I say it brought it on. That is to say, it precipitated it on the basis of the previous disease which was present. If this were not present before he had gotten well, the accident occurred and this was

of such an intensity as to throw him about in the automobile and cause these two fractures, then I would say they are related. . . . I am relating my answer to the basis of the chronological coincidence which seems, according to these assumptions, irrefutable. If that's a relationship — I assume they are related, but how they are related, I don't know."

The defendants may not complain that Dr. Scheinberg's quoted testimony goes beyond the "could" or "might have" limits permitted in relating the later developed disability to the accident of March 6, 1962. When challenged on cross-examination, Dr. Scheinberg stated: "I don't see how one could come to any other conclusion. I say it brought it on." The defendant brought out this testimony by a prodding cross-examination.

Dr. Allen, witness for the defendants, admitted to be a medical expert specializing in the field of neurosurgery, testified in response to the defendants' hypothetical question: "Based on those facts, it is my opinion that the accident could not have caused Mr. Apel's fecal incontinence."

The plaintiff's evidence, in the light most favorable to him, was ample to go to the jury and to support the finding the plaintiff was injured by the negligence of the defendants. The evidence of immediate physical injuries resulting from the accident was sufficient to justify a rather substantial award of damages, although the evidence does not disclose any great loss of earnings. However, it is apparent from the evidence that the major part of the jury's award was based on the evidence of fecal incontinence which developed three or more months subsequent to the 1962 accident. The questions arise whether the plaintiff's medical evidence was properly admissible and, when supplemented by the other testimony, furnishes a sufficient basis to support the entire award. The plaintiff's medical testimony indicates that probably some physical injury or trauma started the atrophy process (traumatic neurosis) which culminated in the loss of control of which the plaintiff now complains. It is evident the plaintiff's experts attach major importance to the chronological sequence of events. The only injuries disclosed in the evidence which could have had influence in producing the harmful result were: (1) the growth on the spinal cord and the operation for its removal in 1944; (2) the accident in 1962; and (3) the exploratory operation in 1963. The plaintiff argues, not without force, that the passage of 18 years after the first operation without symptoms rules out the 1944 operation as an efficient cause of his trouble. The 1963 operation proved negative except for excessive scar tissue resulting from the healing process. That operation was

performed after the trouble had developed, in an effort to locate its cause. The medical testimony suggests that during the time interval between the accident and the loss of control, the process of traumatic neurosis was at work.

For the foregoing reasons we think the court was required to admit the medical testimony and to refuse the special instructions to the jury to disregard it. The plaintiff's expert witnesses were asked for their opinion (based on the recitals in the hypothetical question) whether the accident in 1962 could, or might have resulted in the type of disability alleged in plaintiff's paragraph 16. The answers were favorable to the plaintiff. The form of hypothetical questions and the scope of the answers which are permitted are discussed in many decisions of this Court. This Court has held: "It is well settled in the law of evidence that a physician or surgeon may express his opinion as to the cause of a physical condition of a person if his opinion is based either upon facts within his personal knowledge or upon an assumed state of facts supported by evidence there recited in a hypothetical question." *Spivey v. Newman,* 232 N.C. 281, 59 S.E. 2d 844, citing many cases. Other similar cases not cited in *Spivey* are: *Lockwood v. McCaskill,* 262 N.C. 663, 138 S.E. 2d 541; *Ingram v. McCuiston,* 261 N.C. 392, 134 S.E. 2d 705; *Service Co. v. Sales Co.,* 259 N.C. 400, 131 S.E. 2d 9; *Jackson v. Stancil,* 253 N.C. 291, 116 S.E. 2d 817; *Penland v. Coal Co.,* 246 N.C. 26, 97 S.E. 2d 432; *Hester v. Motor Lines,* 219 N.C. 743, 14 S.E. 2d 794; *Dempster v. Fite,* 203 N.C. 697, 167 S.E. 33; *Parrish v. R. R.,* 146 N.C. 125, 59 S.E. 348; *Jones v. Warehouse,* 137 N.C. 337, 49 S.E. 355. See also, Stansbury, North Carolina Evidence, § 137, p. 270, *et seq.;* 20 Am. Jur., Evidence § 867, p. 731; 66 A.L.R. 2d 1082.

The Court has had, and still has, difficulty in applying the rules to the facts of particular cases. Ordinarily, the hypothetical questions should not be so framed as to permit the witness to answer the ultimate issue to be determined by the jury and thus invade its province. This case is a good illustration of the difficulty. The plaintiff's experts were permitted to answer the lengthy hypothetical question as to whether the plaintiff's particular difficulty *could* or *might* have resulted from the 1962 accident. The witnesses, with some qualifications and explanations, answered, "yes," that the accident could or might have triggered the harmful results. On the other hand, the defendants' medical expert, in answer to the same question, stated, "no," the harmful result *might not* and *could not* have come from the accident. The rule overbalances the advantage in favor of the defendants.

We have discussed the defendants' major objections to the trial.

The other assignments of error have not been overlooked. Exception No. 6, Assignments of Error No. 2, involved the court's refusal to order a mistrial because the plaintiff stated that a photograph showing the damage to his automobile was made by the insurance adjuster for the bus company. Defense counsel moved the court to strike the answer and to order a new trial. The court denied the double barreled motion, but hastened to add that it was taking the motion for mistrial under advisement; then immediately sustained the motion to strike, delivering this caution to the jury: "Ladies and gentlemen, do not consider that statement." We may assume the jury heeded the caution and did not penalize the bus company because its adjuster had taken a photograph of the plaintiff's automobile. *Hoover v. Gregory,* 253 N.C. 452, 117 S.E. 2d 395; *Fincher v. Rhyne,* 266 N.C. 64, 145 S.E. 2d 316; Stansbury, North Carolina Evidence, 2d Ed. 588.

Some of the witnesses were permitted to illustrate their testimony by the use of a chart showing the surroundings of the place where the accident occurred. The plaintiff, after observing the bus for a distance of at least 449 feet, estimated its speed at 50 miles per hour. The judge made jocular side reference about inflation in connection with his charge that in awarding damages for any future suffering or loss, the present worth rule should be observed. Harmful effect in connection with these objections is not disclosed.

This is an important case. Examination of the long record and the exhaustive briefs fails to disclose error of law committed by the trial court.

No error.

PLESS, J., took no part in the consideration and decision of this case.

MOORE, J., not sitting.