NORTH CAROLINA STATE HIGHWAY COMMISSION v. J. R. HELDERMAN AND WIFE, WILLIE H. HELDERMAN

No. 33

(Filed 30 August 1974)

**1. Eminent Domain § 6— evidence of value — testimony by owner**
   Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner.

**2. Eminent Domain § 6— evidence of value — opinion of owner**
   Where defendant's attorney in a land condemnation proceeding asked defendant if he was familiar with the fair market value of real

estate in the vicinity of his property and if he had an opinion satisfactory to himself as to the fair market value of his property on and after the date of the taking, defendant's answer, "Yes, sir, I think so," to both questions was a positive assertion that he knew land value in the vicinity of his property and had an informed opinion satisfactory to himself as to the value of the property on the pertinent date.

**3. Eminent Domain § 6; Trial § 16— evidence of value — comparable tracts — testimony stricken**

Trial court's failure to allow plaintiff's motion for mistrial in a land condemnation proceeding did not constitute prejudicial error where the court ruled that the purchase price paid in asserted comparable sales considered by realtors in valuing defendants' land would not be admitted in evidence, defendants' attorney asked a witness what one such comparable tract sold for, the court sustained plaintiff's objection but the witness answered anyway, and the trial court allowed plaintiff's motion to strike and instructed the jurors that they would not consider the witness's statement.

**4. Eminent Domain § 6— evidence of value — offers inadmissible**

Mere offers, whether made by the owner of comparable properties or to him, are inadmissible to establish value in a land condemnation proceeding; however, an offer by the owner, made at or about the time of the taking, to sell his land for a lesser price than he now contends it is worth, is competent to contradict his present contention.

**5. Eminent Domain § 6— evidence of value — opinion based on prices of comparable tracts — admissibility**

Where a witness in a land condemnation proceeding stated that, among other things, he investigated asking prices of comparable properties in the vicinity of defendants' property and then considered everything he knew in arriving at his estimates of value, his opinion was not inadmissible by reason of the fact that the comparable prices were part of his general knowledge and he did not exclude them from his considerations.

**6. Eminent Domain § 6— evidence of value — elements which may be considered**

Although a witness should consider only proper elements of value, unless he has based his opinion in a material degree upon elements which cannot legally be considered, without separating such elements from those which may legally be considered, such opinion is not incompetent.

**7. Eminent Domain § 7— jury instructions — no prejudicial error**

Plaintiff was not prejudiced by the trial court's error in instructing the jury with respect to damages to property adjoining that of defendants where it was obvious that the court meant property remaining in defendants' tract.

**8. Trial § 52— refusal to set aside verdict for excessive award — no abuse of discretion**

The trial court's refusal to set aside the jury verdict in a land condemnation proceeding is not disturbed on appeal where there was no showing that the court abused its discretion.

APPEAL by defendants under G.S. 7A-30(2) from the decision of the Court of Appeals (20 N.C. App. 394, 201 S.E. 2d 568) vacating the judgment of *McLean, J.,* for errors in the trial at the March 1973 Session of HENDERSON.

This proceeding was instituted by the State Highway Commission (now the Board of Transportation) on 7 August 1972 to condemn a portion of land belonging to defendants for its Project 8.1834101 to widen and relocate a portion of U. S. Highway No. 64 in Henderson County. *See* G.S. 136-18(16) (1964), N. C. Session Laws, ch. 507, sec. 5 (1973), G.S. 136-18(16) (1974). Simultaneously plaintiff filed a declaration of taking and deposited with the Clerk of the Superior Court $3,100 as its estimate of just compensation for the taking. The tract affected, trapezoidal in shape, contains 2.41 acres. Of it plaintiff is taking .22 of an acre. The land is located about one-half mile north of Hendersonville on the west side of U. S. 64, a heavily traveled highway and one the main thoroughfares from Hendersonville to Interstate Highway No. 26.

At the time of the taking, on the north the 2.41 acres fronted 228 feet on Linda Vista Drive, a State-maintained, 30-foot, graveled street. On the east it fronted 381.5 feet on No. 64, a two-lane, paved thoroughfare (now denominated "old U. S. 64"). From No. 64 the southern boundary ran northwesterly 428 feet to a corner from which the western boundary coursed northeasterly 321.7 feet to Linda Vista Drive. (These distances embrace all previously existing rights-of-way on the tract.) The property is generally level, vacant land, covered with brambles.

The .22 acre condemned extends from the southern boundary of the tract northeasterly along the western right-of-way line of old U. S. 64 to Linda Vista Drive; thence northwesterly with the right-of-way of Linda Vista 77.87 feet to a point. From there the line runs southerly, on three different calls, 387.78 feet to the tract's southern line; thence with that line 13.94 feet to old U. S. 64.

Control of access along the entire western line of the .22 acre taken was also condemned. A steel-wire fence, 4-5 feet high, runs the length of this line. Thus, defendants' remaining land, 2.19 acres, now has no direct access to No. 64. Linda Vista Drive, on which defendants' frontage is now 155 feet, provides its only access. After driving 70 feet from U. S. 64 on Linda Vista "you can turn left into the property and come back out

the same way. You can drive north down the four-lane highway and from I-26 and turn from either direction onto Linda Vista Drive and get onto the property."

Now, after the date of taking, a portion of new U. S. 64, a four-lane highway, "gets into appproximately 1/3 of the northeast corner of the subject property." Here it incorporates old U. S. 64 for an undisclosed distance. It then diverges to continue a strighter course south, while old U. S. 64 continues "in front of the subject property" as a one-way street south into Hendersonville.

Prior to the trial, by a consent order, all issues were eliminated except the amount which defendants are entitled to recover as just compensation for the appropriation on 7 August 1972 of a portion of their property for highway purposes.

At the opening of court on Monday, 12 March 1973, Mr. James B. Richmond, a State Highway Commission attorney from Raleigh, appeared for plaintiff and Mr. Monroe Redden of Hendersonville, for defendants. When it developed that this case would be the only jury trial during the week and that a nonjury case would precede it, Judge McLean suggested to counsel that a jury be selected, empaneled, and then excused until Wednesday morning. Both attorneys agreed to this procedure, and a jury, including two alternates, was duly chosen and empaneled. After they had received the instructions usually given to jurors before a recess, the jurors were excused. When the case was called for trial on Wednesday morning Mr. Richmond was not present. Plaintiff was then represented by Messrs. Guy A. Hamlin and G. Edison Hill, attorneys from Asheville. They moved that the jury which had been empaneled on Monday be discharged and that another jury be selected by the attorneys who would try the case. Judge McLean denied this motion, and the Court of Appeals sustained his ruling.

At the trial defendant J. R. Helderman and Messrs. B. H. Laughridge, Jr., James M. Edney, Sr., and Grayson Willeford, three realtors doing business in Henderson County, testified for defendants. One local realtor, Mr. John N. Gould, and a salaried appraiser for the State Highway Commission, Mr. Russell Carter, Jr., testified for plaintiff.

The witnesses for both plaintiff and defendants agreed that the highest and best use for the 2.41-acre tract prior to the taking was for business and commercial purposes. Defendants' wit-

nesses specified "highway business," service station, motel, restaurant, drive-in bank, "that sort of thing." Plaintiff's witnesses testified that the property is located in "a developing business and commercial area just beyond the city limits of Hendersonville" and that "it definitely had commercial potential."

Defendant Helderman's testimony tended to show that he paid between $22,000 and $23,000 for the land 7-8 years ago; that land in the area had steadily increased in value since then; that he knew the market value of his property on 7 August 1972 and, in his opinion, it was worth $40,000 per acre prior to the taking and only $10,000 per acre thereafter (a difference of $67,900). Plaintiff did not object to defendants' testimony as to value. Mr. Laughridge, basing his appraisal on four sales, which he deemed to be "comparable sales in the vicinity," his investigation of "asking prices" for similar property, and "all that he had learned" with reference to property in the area, valued defendants' property before the taking at $40,000 an acre. Without objection he testified that, in his opinion, the value of the property was $96,400 before and $29,500 after the taking, a difference of $66,500. Mr. Edney, on the basis of three sales in the vicinity which he "felt to be comparable," two of which had been cited by Laughridge, also appraised defendants' property at $40,000 per acre on 7 August 1972. In his opinion defendants had suffered damages in the amount of $66,630 by reason of the taking. Mr. Willeford testified that he considered defendants' damage to be $66,835. Plaintiffs made no objection to any part of the testimony of either Edney or Willeford.

At the beginning of Mr. Laughridge's testimony he stated that a sale of comparable property in the vicinity was made on 15 February 1973 by Goodman to Dana Associates. When plaintiff objected on the ground that this sale was made "after the date of taking," the court excused the jury. In its absence Laughridge testified that property values in the vicinity were substantially the same in August 1972 and February 1973; that the "comparable property" consisted of 1.33 acres fronting 280 feet on the east side of the four-lane "new" U. S. 64, directly across from the subject property; and that Dana paid $65,000 for the land. Laughridge did not know the date on which the four-lane highway was constructed.

At the conclusion of the *voir dire* on this piece of property Judge McLean made the following ruling: "I will sustain the

objection as to the price. I will let him describe the property which he deems comparable. He can state whether he examined this piece of property and whether, in his opinion, it is a comparable price." The jury returned and, without obection, Laughridge testified in accordance with that ruling. He also described an acre of land, adjacent to the Goodman property, which Lender sold to Wright on 16 August 1971. Despite the previous ruling of the court, counsel for defendants asked Laughridge what the one acre sold for. Although plaintiff's objection was sustained the witness answered, $45,000, ignoring the court's ruling. Plaintiff's motion to strike was allowed and the court instructed the jury not to consider the answer. Immediately thereafter counsel asked the witness, "You did investigate the price and determine for your own satisfiction what it brought?" The witness answered, "Yes", and plaintiffs moved for a mistrial. Their motion was denied.

Laughridge next testified that he investigated the sale of five acres immediately behind the Goodman property which Thompson made to Dana on 15 February 1973 and also a sale of eight-tenths of an acre which Hyder and Henderson made to Humble Oil Company on 28 April 1966.

Plaintiff's witness Carter valued defendants' property at $29,800 prior to the taking and $13,800 afterwards, "for a difference of $15,800." (sic). He testified that in the course of making his appraisal he investigated more than 100 sales in and around Hendersonville, beginning back in 1967. He also made an economic study of the area. In arriving at his evaluation of defendants' property, however, he considered only three specified sales, which he deemed "comparable to the subject property." These sales were made between 18 June 1971 and 7 August 1972. In his deliberations he adjusted these three sales "for time which was 8-10 percent upwards, a year."

Although he was familiar with the sales from Goodman to Dana Associates, Lender to Wright, and Thompson to Dana Associates, "all being on the east side of the four-lane highway," Carter did not consider them in arriving at the values he placed upon defendants' property. He testified that, in his opinion, these were not comparable sales because (1) they occurred after the date of the taking (the majority, after the project was completed), and the new four-lane connector would inflate values; and (2) "they were sales which were combined for plottage."

Several times during his testimony the court denied Carter's request that he be allowed to explain his answer during Mr. Redden's cross-examination. Plaintiff excepted to these rulings, but the explanations nowhere appear in the record.

Mr. Gould gave defendants' property a valuation of $26,280 before the taking and $13,140 afterwards, a difference of $13,140. Like Mr. Carter he did not consider the sales on which defendants' witnesses based their appraisals. Despite a 50% loss in value it was Gould's opinion that defendants' remaining 2.19 acres could be used for a number of industrial or commercial enterprises.

The jury awarded defendants $47,500 "as just compensation . . . for the appropriation of a portion of their property for highway purposes on the 7th day of August, 1972." From the judgment entered upon the verdict plaintiff appealed. The Court of Appeals ordered a new trial on the ground that "the cumulative effect" of numerous errors committed by the trial judge, any one of which might not have been sufficiently prejudicial to warrant a trial *de novo,* had deprived plaintiff of a fair trial. One member of the panel having dissented, defendants appealed to this Court as a matter of right.

*Attorney General Morgan; Deputy Attorney General White; Assistant Attorney General Hamlin for plaintiff appellee.*

*Redden, Redden & Redden for defendant appellants.*

SHARP, Justice.

The position of defendants (appellants here, appellees below) is that plaintiff's assignments of error neither singly nor collectively disclose any error sufficiently prejudicial to justify the trial *de novo* ordered by the Court of Appeals.

On this appeal we do not consider any assignment which the Court of Appeals decided adversely to plaintiff, that is, over-ruled. We examine first plaintiff's assignment No. 3, which the Court of Appeals sustained, that the trial court erred in permitting one of the owners, defendant J. R. Helderman, to express an opinion as to the value of his property before and after the taking without any showing that he was qualified to give such an opinion. This assignment raises the question whether the owner of property is *ipso facto* presumed qualified to give an opinion as to its market value.

[1]  Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner. "He is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to have a reasonably good idea of what it is worth. The weight of his testimony is for the jury, and it is generally understood that the opinion of the owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention. . . . " 5 Nichols, Law of Eminent Domain, § 18.4(2) (3rd ed., 1969), wherein the decisions pro and con are collected. *Accord,* 32 C.J.S., *Evidence* § 546 (116) (1964); 32 C.J.S., *Evidence* § 545(d)(3) (pp. 305-306) (1942); Jahr, Law of Eminent Domain § 133 (1953); 3 Wigmore on Evidence, §§ 714, 716 (Chadbourn rev. 1970). *See Light Co. v. Rogers,* 207 N.C. 751, 753, 178 S.E. 575, 576 (1935). For an exposition of the minority rule that the owner, just as any other witness, must establish his qualifications before expressing his opinion of market value, *see Commonwealth, Department of Highways v. Fister,* 373 S.W. 720 (Ky., 1963).

[2]  When his attorney asked defendant Helderman if he was familiar with the fair market value of real estate in the vicinity of his property and if he had an opinion satisfactory to himself as to the fair market value of his property on and after 7 August 1972, he answered both questions, "Yes, sir. I think so." The market value of land is usually a matter of opinion, and we interpret defendant's answers as a positive assertion that he knew land values in the vicinity of his property and had an informed opinion, "satisfactory to himself," as to the value of his property on the pertinent date. In *Harrelson v. Gooden,* 229 N.C. 654, 50 S.E. 2d 901 (1948), an owner's similar assertion was held sufficient to establish prima facie his qualifications to testify as to value. The Court said, "This evidence was not incompetent. Its probative value, subject to being tested on cross-examination, was for the jury." *Id.* at 657, 50 S.E. 2d at 903. *(See* 32 C.J.S., *Evidence* § 546 (115), n. 65 at p. 432 (1964), for comment on *Harrelson v. Gooden, supra.)*

In our view, Helderman was entitled to testify to the value of his property. However, the short answer to plaintiff's contention that it was error to permit him to do so is that counsel

did not object to the questions which elicited his estimates of the value of the property before and after the taking. We hold that plaintiff's assignment of error should have been overruled.

[3]   The assignment of error No. 5 which plaintiff stresses most forcibly is directed to Judge McLean's refusal to grant its motion for a mistrial after the following incident, which has been more fully described in the preliminary statement of facts. After the court had ruled that the purchase price paid in asserted "comparable sales" considered by the realtors in valuing defendants' land would not be admitted in evidence, defendants' attorney asked the witness Laughridge what one such "comparable", one-acre tract (the Lender lot) "sold for." Notwithstanding the court sustained plaintiff's objection, the witness answered, "$45,000." Both the question and answer set at naught the court's ruling. Right or wrong, the ruling should have been respected by both attorney and witness. At that time no witness except the owner had given his opinion as to the value of the land, and, at that stage of the trial, Judge McLean would have been within bounds had he allowed the motion for a mistrial. Instead, however, he allowed plaintiff's motion to strike and instructed the jurors that they would "not consider that statement."

We are unable to determine from the record whether the court correctly ruled that the sales price of the Lender land, or that of the other tracts which defendants' witnesses considered comparable in arriving at their valuation of defendants' property, was inadmissible evidence. The question of admissibility was not determined in accordance with the decisions of this Court. If the sales were in fact comparable, the price was admissible; otherwise, not. If the properties or sales were not comparable the court erred in allowing the witnesses to describe the land sold to the jury, to state that they deemed the sales comparable and had considered the sales prices in determining the values they had placed upon defendants' property. In any event, the ruling of the court, which permitted the witnesses to describe the sales as comparable while excluding the sales price, was inconsistent. However, neither party excepted to the ruling.

In this State the rule is well settled "that the price paid at voluntary sales of land, similar in nature, location, and condition to the condemnee's land, is admissible as independent evidence of the value of the land taken if the prior sale was not too remote in time. Whether two properties are sufficiently

similar to admit evidence of the purchase price of one as a guide to the value of the other is a question to be determined by the trial judge in the exercise of a sound discretion guided by law." *State v. Johnson,* 282 N.C. 1, 21, 191 S.E. 2d 641, 655 (1972). *See Redevelopment Comm. v. Panel Co.,* 273 N.C. 368, 159 S.E. 2d 861 (1968). The approved practice is for the judge to conduct a *voir dire,* to hear testimony in the absence of the jury as a basis for determining the admissibility of such evidence. *Barnes v. Highway Commission,* 250 N.C. 378, 109 S.E. 2d 219 (1959) ; *Highway Commission v. Pearce,* 261 N.C. 760, 136 S.E. 2d 71 (1964) ; *Highway Commission v. Coggins,* 262 N.C. 25, 136 S.E. 2d 265 (1964) ; *Carver v. Lykes,* 262 N.C. 345, 137 S.E. 2d 139 (1964).

After the denial of plaintiff's motion for a mistrial defendants' witnesses testified without objection as to the valuations which they had placed upon defendants' land, and plaintiff's witnesses explained to the jury why, in their opinion, the asserted comparable sales were not, in fact, comparable. In their turn, without the judge having conducted a *voir dire,* plaintiff's witnesses likewise described lands which they asserted were comparable to defendants' and testified that they had based their valuations of defendants' property upon the sales price of these tracts.

Under all the circumstances we cannot say that the court's failure to allow the motion for a mistrial constituted prejudicial error. Where the judge sustains a motion to strike an answer of a witness and immediately cautions the jury not to consider it, it will be assumed that the jury followed the instruction and no prejudice resulted. *Apel v. Coach Co.,* 267 N.C. 25, 147 S.E. 2d 566 (1966) ; 7 Strong's North Carolina Index 2d, *Trial* § 16 (1968). Assignment of error No. 5 is not sustained.

Plaintiff's assignment No. 6 is that the trial court erred "in allowing defendants' witness Laughridge *to testify* that in forming his opinion of value he investigated the asking price which owners of similar property in that area were demanding." (Emphasis added.)

As this Court said in *Highway Commission v. Coggins, supra* at 31, 136 S.E. 2d at 269, "It is not the offering of property at a given price that furnishes evidence of market value; it is the actual sale by 'a seller willing but not obliged to sell, to a buyer willing but not obligated to buy.' An owner may and fre-

quently does place a higher price on his property than it will bring in the market. It is not until a voluntary buyer is willing to take the property at the stated price that the transaction becomes an indication of market value." *See Canton v. Harris,* 177 N.C. 10, 12, 97 S.E. 748, 749 (1918). A mere offer to buy or sell property is incompetent to prove its market value. The figure named is only the opinion of one who is not bound by his statement and it is to unreliable to be accepted as a correct test of value. *State v. Lincoln Memory Gardens, Inc.,* 242 Ind. 206, 177 N.E. 2d 655 (1961); *State v. Morehouse Holding Company,* 225 Ore. 62, 357 P. 2d 266 (1960); *Thornton v. Birmingham,* 250 Ala. 651, 35 So. 2d 545, 7 A.L.R. 2d 773 (1948). *See* Annot., 7 A.L.R. 2d 781 (1948); McCormick on Evidence, § 166 (1954); 1 Orgel, Valuation under Eminent Domain § 148 (1953).

[4]   The rule is firmly established that mere offers, whether made by the owner of comparable properties or to him, are inadmissible. "The objections to the reception of evidence of offers to buy the identical land which is taken are multiplied ten fold in the case of other land in the neighborhood, and if offers for neighborhing land were competent, the trial of a land damage case would degenerate into a confused and endless wrangle in which collateral issues and what is, in substance, hearsay evidence would play the most prominent part." 5 Nichols, *supra,* § 21.4(3) (1969). However, an offer by the owner, made at or about the time of the taking, to sell his land for a lesser price than he now contends it is worth, is competent to contradict his present contention. *Id.* § 21.4(2). *See* Jahar, *supra,* § 145 (1953).

[5]   In his testimony Laughridge did not state the asking price of any of the "comparable" properties in the vicinity, and he did not base his opinion solely on them or upon any other one factor. His statement was that, among other things, he investigated the asking prices and then considered everything he knew in arriving at his estimates of value. The prejudice here, if any, would not have come from his statement that the asking prices were a part of the general information upon which he based his opinion. The question is whether the fact that these prices were a part of his general knowledge and he did not exclude them from his considerations required the rejection of his opinion. The answer is No.

[6]   Although the witness should consider only proper elements of value, unless he "has based his opinion in a material degree upon elements which cannot legally be considered, without sep-

arating such elements from those which may legally be considered, without separating such elements from those which may legally be considered, such opinion is not incompetent." 5 Nichols, *supra*, § 18.42(1) (1969). The element complained of here affects the weight rather than the competency of the evidence.. In *Highway Commission v. Conrad*, 263 N.C. 394, 399, 139 S.E. 2d 553, 557 (1964), this Court quoted with approval the following statement from *People v. Gangi Corporation*, 15 Cal. Rep. 19, 25 (1961), rev'd on different grounds sub nom. *People v. Donovan*, 57 Cal. 2d 346, 19 Cal. Rep. 473 (1962) : " 'An integral part of an expert's work is to obtain all possible information, data, detail and material which will aid him in arriving at an opinion. Much of the source material will be in and of itself inadmissible evidence but this fact does not preclude him from using it in arriving at an opinion. All of the factors he has gained are weighed and given the sanction of his experience in his expressing an opinion.' " This statement appears to describe the manner in which Mr. Laughridge arrived at the opinions he expressed. It was not error for the court to permit him to detail the facts upon which he based his opinions. *Highway Commission v. Conrad, supra*. However, we again note that his opinions went into evidence without objection from plaintiff. We find no merit in assignment No. 6.

[7] Finally we consider assignment No. 16, which challenges the following portion of Judge McLean's charge: "As the court has heretofore instructed, Members of the Jury, the measure of damages is the difference between the fair market value of the property immediately before the taking and the fair market value of the remainder of the tract after the taking, which shall include the value of the property taken plus damages to the *adjoining* property." (Italics ours.) Plaintiff's exception relates to the use of the italicized word "adjoining." What the judge intended to say, of course, was "remaining" property. He had previously instructed that the measure of damages for the taking was "the difference between fair market value of the entire tract immediately prior to said taking and the fair market value of the *remainder* immediately after said taking." (Italics ours.)

Plaintiff contends that "damages to the adjoining property have no bearing upon damages to the subject property and do not enter into the case." We consider this contention so obviously true that it is inconceivable to us the jury could have thought

the judge was referring to property belonging to others which adjoined defendants' original 2.41 acres. On the contrary, the jurors must have understood that his Honor meant defendants' remaining property which then adjoined the .22 acres taken. Our opinion is bolstered by the fact that defendants owned no other property in the area.

After having examined all of plaintiff's assignments, it is our decision that none disclose error in law sufficiently prejudicial to require a new trial.

[8] Plaintiff's argument on its assignment that the judge erred in refusing to set aside the verdict because it was an excessive award is no doubt the same argument its counsel directed to the jury before verdict and to the judge thereafter. The trial judge's refusal to set aside a verdict for excessiveness "will not be disturbed on appeal unless it is obvious that he abused his discretion," and no such abuse of discretion appears in this case. *Kight v. Seymour,* 263 N.C. 790, 792, 140 S.E. 2d 410, 413 (1965) ; 7 Strong's North Carolina Index 2d, *Trial,* § 52 (1968). Perhaps a comment appearing in *Brown v. Power Co.,* 140 N.C. 333, 348, 52 S.E. 954, 960 (1905) is pertinent here: "As long as witnesses differ so widely in their opinion as to values, and as long as litigants measure value so entirely by the standard of self-interest, we cannot hope for verdicts that shall be satisfactory to both parties. The utmost to which we can hope to attain is to sometimes reach a verdict that is unsatisfactory to both parties."

The decision of the Court of Appeals is

Reversed.