LUTHER R. MEDLIN, JR., AND WIFE, PAMELA DICKENSON MEDLIN, PLAINTIFFS V. FYCO, INC., A NORTH CAROLINA CORPORATION, AND M. FRANK YOUNG, DEFENDANTS

No. COA99-1067

(Filed 15 August 2000)

## 1. Trials— mistrial—mention of insurance

The trial court did not abuse its discretion by denying defendant's motion for a mistrial made after plaintiffs' second witness made reference to defendant's insurance carrier in an action for breach of implied warranty of habitability concerning synthetic stucco, because: (1) the mention conveyed, at most, a suggestion that coverage existed and was not direct evidence of an independent fact that defendant was insured against liability for defects in plaintiffs' house; (2) the reference was incidental,

MEDLIN v. FYCO, INC.

[139 N.C. App. 534 (2000)]

insignificant, and inadvertent, so that the trial judge determined that giving the jury a curative instruction would only serve to highlight the matter and bring it to the jury's attention; and (3) while the better practice may have been to give a curative instruction, defendant neither requested such an instruction nor assigned error to the trial court's failure to give one.

**2. Warranties— implied warranty of habitability—synthetic stucco—motion for directed verdict—judgment notwithstanding the verdict**

The trial court did not err by denying defendant's motions for directed verdict and judgment notwithstanding the verdict in an action for breach of implied warranty of habitability concerning synthetic stucco, because: (1) there was substantial evidence that plaintiffs' house failed in the essential requirement of keeping moisture out, a major structural defect sufficient to take the case to the jury under strict liability; and (2) there was evidence that defendant's installation of the synthetic stucco was not in accordance with the manufacturer's specifications or the North Carolina Building Code, meaning it did not meet the prevailing standard of workmanlike quality.

**3. Warranties— implied warranty of habitability—synthetic stucco—jury instruction—workmanlike construction**

Although defendant contends the trial court erred by failing to require that the jury find before awarding damages that such damages were proximately caused by defendant's failure to meet the industry standards of *workmanlike construction* in an action for breach of implied warranty of habitability concerning synthetic stucco, the trial court gave the substance of this instruction requiring the jury to find the necessary causal link between defendant's breach and plaintiffs' damages, and even if the instructions were deficient on proximate causation, the evidence was overwhelming.

**4. Interest— prejudgment—breach of implied warranty of habitability—date action instituted**

The trial court did not err by awarding plaintiffs prejudgment interest from the date the action was instituted, as opposed to the date of defendant's breach of the implied warranty of habitability concerning synthetic stucco, because the implied warranty of habitability is a quasi-contract with the awarding of interest governed by N.C.G.S. § 24-5(b).

**MEDLIN v. FYCO, INC.**

[139 N.C. App. 534 (2000)]

Appeal by plaintiffs and defendant FYCO, Inc., from judgment entered 4 December 1998 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 7 June 2000.

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr. and Amanda L. Fields, for plaintiffs.*

*Dean & Gibson, LLP, by Christopher J. Culp, and Brown, Todd & Heyburn, PLLC, by Julie Muth Goodman and Mark R. Cambron, for defendant FYCO, Inc.*

MARTIN, Judge.

Plaintiff brought this civil action alleging breach of express and implied warranties, negligence, negligent misrepresentation, unfair and deceptive trade practices and fraud. Prior to or during trial, defendant M. Frank Young was granted summary judgment or directed verdict as to all claims asserted against him in his individual capacity, and defendant FYCO, Inc., was granted summary judgment or directed verdict as to all claims asserted against it, with the exception of the claim for breach of the implied warranty of habitability.

The trial of this action commenced on 26 October 1998 and concluded on 4 November 1998. At trial, the parties offered evidence which, briefly summarized, tended to show that plaintiffs Luther and Pamela Medlin purchased a house, located at 2003 Brassfield Road, Greensboro, North Carolina, from FYCO, Inc., a general contractor and builder, for $335,000.00 in December 1993. The exterior cladding of the house was an exterior insulation and finish system (EIFS), commonly referred to as "synthetic stucco," rather than real stucco as the Medlins asserted they were told. Less than two years later, the Medlins began having serious moisture problems with the residence and, in 1996, defendant Young, FYCO's president, told them the house had been constructed using EIFS. At about the same time, the building industry was discovering problems with the use of EIFS and the North Carolina Building Code Council placed a moratorium on the use of EIFS in 1996. Evidence was presented with respect to both the inherent incompatibility of EIFS with other building materials commonly used in residential construction, and the improper and defective installation of the EIFS on plaintiffs' house, resulting in significant water intrusion problems. Plaintiffs also offered evidence tending to show that the roof and attic framing in their house was structurally inadequate, the front foyer wall had been improperly constructed and was not structurally sound, and that there was inad-

**MEDLIN v. FYCO, INC.**

[139 N.C. App. 534 (2000)]

equate support for two bay windows. Plaintiffs presented evidence from three witnesses tending to show the costs to repair the defective work would be $191,300.00.

The jury returned a verdict in favor of plaintiffs finding that FYCO had breached the implied warranty of habitability and awarding damages in the amount of $187,305.00. The trial court entered judgment on the verdict and awarded plaintiffs prejudgment interest from the date of the filing of the complaint. Defendant FYCO appeals; plaintiffs cross-appeal the trial court's refusal to award pre-judgment interest from the date of breach rather than from the date of filing of the complaint.

---

## DEFENDANT FYCO'S APPEAL

### I.

[1] Defendant contends that the trial court erred by denying its motion for mistrial, made after plaintiffs' second witness, Walter Strand, III, made reference to FYCO's insurance carrier during his testimony. Mr. Strand, a structural engineer, was relating his observations, and the reports he had reviewed, upon his first inspection of plaintiffs' home and testified:

Now, when we arrived on site at this house, Mr. Medlin and Mr. Grimes provided me with two moisture reports that had been done by others prior to my being requested to become involved in the project. One by a firm, I believe, called Quality Residential Inspections or Quality Residential Testing. And I reviewed that and saw that the gentleman who had performed those tests had found several areas on the house of what is considered to be elevated moisture or high moisture content in the structure below the EIFS.

The other report was a much more thorough report. It was done by the firm of Kimley-Horn & Associates, which is a very reputable large engineering firm in Raleigh. And it's my understanding that Kimley-Horn had provided that inspection on behalf of perhaps the builder's insurer on that project. So they were essentially working for FYCO or somehow related to that side of the case. I reviewed that report and it showed many, many locations of elevated moisture on the house.

And as I said, I find, I've seen Kimley-Horn's work before. We get involved on numerous projects together where they're out

representing Maryland Casualty, the builder's insurer, and we're out there representing a homeowner. And we invariably come up with the same results. I mean, their data is good. They know what they're doing. For that reason, I suggested to Mr. Medlin that he not waste any money on having me redo the moisture testing part of the evaluation, I'd just do the visual evaluation, which is what we did.

MR. BERKELHAMER: Your Honor, could we approach?

THE COURT: Ladies and Gentlemen, step into the jury room please.

Defendant's counsel moved for a mistrial and, after a hearing in the absence of the jury, the trial court reserved ruling throughout the remainder of the trial to determine "whether there is any apparent prejudice to the defendant's case." Although plaintiffs' counsel suggested "some form of limiting instruction," defense counsel made no such request and the trial court declined to give any such instruction.

In hearing defendant's post-trial motions, the trial court again considered defendant's earlier motion for mistrial. In denying the motion, the trial court observed:

The most troubling aspect of this, for me, and at the time of the incident, was the witness' reference—that's Mr. Strand, as I recall it. And the transcript that counsel provided me supports it. My recollection—or my impression was that this was a rather voluntary and somewhat pompous narrative by Mr. Strand, about his undertaking in this case, and the reference to the Kimley-Horn report, in my mind at the time, and again at this time, the references to that firm's involvement on behalf of the plaintiffs—or defendants, rather, it seemed to me to be made in an effort to buttress or to support the validity of that report, rather than to inject before the jury the specter that there was a deep pocket here willing to pay. But when he said it again, prior to the time we excused the jury, and I confronted that witness, when he said it again, he said it more explicitly. He said, "We invariably come up with the same results. I mean, their data is good." I believe his intention, however misguided it was, in making reference to that firm's involvement, was to try to show that "the findings in that report are similar to the findings in my report or in line with what I'm trying to show, and therefore, they're good."

MEDLIN v. FYCO, INC.

[139 N.C. App. 534 (2000)]

As counsel's correct to point out, as well, I did not give a curative instruction, because I felt that would be throwing gasoline on a small spark. I believed at the time, and I continue to believe, after reviewing this transcript, that the purpose of the mention of that firm and their involvement in the case was simply to expand on the validity of their findings, to the degree that those findings corresponded with Mr. Strand's position in the case.

The error, if there is an error, a reversible error, is going to be that the Court did not deliver a curative instruction, but again, I hope the courts may review that, in view of what my determination was, and my discretion at the time was that it was not a significant mention, was not made for improper purpose, and the curative instruction was simply going to make a situation much worse than it was.

In any event, I believe that the evidence is—competent evidence introduced during the trial was sufficient to support the jury's verdict. I do not believe the jury's verdict was based on speculation or on evidence of liability insurance coverage or on any other improper factor or motive.

G.S. § 8C-1, Rule 411 provides that evidence that a person was or was not insured against liability is not admissible upon the issue of whether he acted wrongfully. In *Fincher v. Rhyne*, 266 N.C. 64, 145 S.E.2d 316 (1965), our Supreme Court, noting that the existence of liability insurance is not relevant to the issues of fault or damages, stated:

[w]here testimony is given, or reference is made, indicating directly and as an independent fact that defendant has liability insurance, it is prejudicial, and the court should, upon motion therefor aptly made, withdraw a juror and order a mistrial. But there are circumstances in which it is sufficient for the court, in its discretion, because of the incidental nature of the reference, to merely instruct the jury to disregard it (citations omitted).

*Id.* at 69, 145 S.E.2d at 319-20. *See also Apel v. Queen City Coach Co.*, 267 N.C. 25, 147 S.E.2d 566 (1966) (denying a mistrial and finding sufficient a jury instruction to disregard testimony that a photograph showing damage to an automobile was made by bus company's insurance adjuster). Indeed, where the reference to insurance is incidental and conveys, at most, merely the idea that coverage exists, "a mistrial

would seem rarely, if ever, to be justified." 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence*, § 108, p. 333 (5th ed. 1998); *see Carrier v. Starnes*, 120 N.C. App. 513, 463 S.E.2d 393 (1995), *disc. review denied*, 342 N.C. 653, 467 S.E.2d 709 (1996) (mistrial not required where mention of insurance was not used as evidence of an independent fact).

The decision of whether a mistrial is required to prevent undue prejudice to a party or to further the ends of justice is a decision vested in the sound discretion of the trial judge. *Keener v. Beal*, 246 N.C. 247, 98 S.E.2d 19 (1957). The trial judge is vested with such discretion " 'because of his learning and integrity, and of the superior knowledge which his presence at and participation in the trial gives him over any other forum.' " *Id.* at 256, 98 S.E.2d at 25 (quotation omitted). An abuse of discretion occurs " 'where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *Long v. Harris*, 137 N.C. App. 461, 464, 528 S.E.2d 633, 635 (2000) (quotation omitted).

In the present case, Mr. Strand's mention of Kimley-Horn's connection with defendant's insurer conveyed, at most, a suggestion that coverage existed; it was not direct evidence of an independent fact that defendant was insured against liability for defects in plaintiffs' house. The reference was, as the trial judge noted, incidental, insignificant, and inadvertent, so much so that the judge determined that giving the jury a curative instruction would only serve to highlight the matter and bring it to the jury's attention. The trial judge's careful weighing of the potential prejudice of Mr. Strand's statement against all of the other evidence presented at trial demonstrates the decision to deny the motion for mistrial was the result of a reasoned decision, rather than an arbitrary one. While the better practice may have been to give a curative instruction, defendant neither requested such an instruction nor assigned error to the trial court's failure to give one. We find no abuse of discretion in the trial court's denial of defendant's motion for mistrial.

## II.

[2] Assigning error to the denial of its motions for directed verdict and judgment notwithstanding the verdict, defendant next contends plaintiffs presented insufficient evidence to support an EIFS-related damage award for breach of an implied warranty of habitability. Defendant argues plaintiffs were required to show, and did not, that their moisture intrusion problems resulted from defendant's failure

**MEDLIN v. FYCO, INC.**

[139 N.C. App. 534 (2000)]

to meet the applicable standards of construction, rather than inherent defects in the EIFS. We disagree.

The question presented by a defendant's motion for directed verdict pursuant to G.S. § 1A-1, Rule 50(a) is whether the evidence, considered in the light most favorable to the plaintiff, was sufficient to take the case to the jury and to support a verdict for the plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). The same question is presented by a motion for judgment notwithstanding the verdict; the motion is essentially a renewal of an earlier motion for directed verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 329 S.E.2d 333 (1985). If there is evidence to support each element of the plaintiff's claim, the motions should be denied. *Abels v. Renfro Corp.*, 335 N.C. 209, 436 S.E.2d 822 (1993).

The implied warranty of habitability arises by operation of law, *Griffin v. Wheeler-Leonard & Co., Inc.*, 290 N.C. 185, 225 S.E.2d 557 (1976), and requires that a building and all of its fixtures be "sufficiently free from major structural defects, and . . . constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." *Hartley v. Ballou*, 286 N.C. 51, 62, 209 S.E.2d 776, 783 (1974). The test for breach of the implied warranty of habitability is whether there is a major structural defect or "a failure to meet the prevailing standard of workmanlike quality" in the construction of the house; whether the defendant has breached the implied warranty of habitability is a question of fact for the jury. *Gaito v. Auman*, 313 N.C. 243, 252, 327 S.E.2d 870, 877 (1985). The implied warranty of habitability imposes strict liability upon the warrantor. *George v. Veach*, 67 N.C. App. 674, 678, 313 S.E.2d 920, 922 (1984) (citing W. Prosser, Law of Torts § 95, 97 (4th ed. 1971)). "Fault on the part of the builder-vendor is not a prerequisite to liability under the doctrine of implied warranty." *Id. See also Griffin, supra.*

In this case, there was substantial evidence that plaintiffs' house failed in the essential requirement of keeping moisture out, a major structural defect. Such evidence was sufficient to take the case to the jury under strict liability, irrespective of defendant's knowledge, or lack thereof, as to the inherent problems with EIFS, or any fault on its part in installing the EIFS. Moreover, there was also evidence that defendant's installation of the EIFS was not in accordance with the manufacturer's specifications or the North Carolina Building Code, thus it did not meet the prevailing standard of workmanlike quality.

We hold there was sufficient evidence to support the jury's award of damages for plaintiffs' EIFS claim.

### III.

[3] Finally, defendant contends the trial court erred in its jury instructions by failing to require the jury to find, before awarding damages, that such damages were proximately caused by defendant's failure to meet the industry standards of workmanlike construction. We hold the instructions were adequate.

As we have discussed, a builder-vendor such as defendant FYCO is liable for breach of the implied warranty of habitability if the house fails to meet the standard of workmanlike quality, irrespective of fault. The court instructed the jury:

> . . . [T]o prevail on a claim for an implied warranty of breach of workmanlike quality, ladies and gentlemen, the plaintiffs must also show that the structural defects of which they complain *had their origin in the builder/seller* and in construction which does not meet the standard of workmanlike quality then prevailing at the time and place of construction (emphasis added).

On the issue of damages, the court instructed:

> . . . Where there is a breach of an implied warranty of workmanlike quality, the party claiming damages is entitled to recover the amount required to bring the property into compliance with the implied warranty.
>
> . . .
>
> The law requires, ladies and gentlemen, that the plaintiff' damages, if any, on this issue must be reasonably determined from the evidence presented in the case.
>
> . . .
>
> With regard to the second issue on which the plaintiffs, Mr. and Mrs. Medlin, have the burden of proof, if you find by the greater weight of the evidence the amount of damages sustained by the plaintiffs *by reason of the defendant's breach of warranty*, then it would be your duty to write that amount in the blank space provided following issue number 2 (emphasis added).

" 'The court is not required to charge the jury in the precise language requested so long as the substance of the request is

included.' " *Shreve v. Combs*, 54 N.C. App. 18, 28, 282 S.E.2d 568, 575 (1981) (quotation omitted). The foregoing instructions clearly required the jury to find the necessary causal link between defendant's breach and plaintiffs' damages. Moreover, even if the instructions were arguably deficient on the issue of proximate causation, the evidence that defendant's use of, or improper application of, EIFS in the construction of the house was the proximate cause of the moisture intrusion damage, was so overwhelming as to compel such a finding. Where the evidence is so strong as to permit the jury to draw but one conclusion as to proximate cause, a new trial will not be granted by reason of an erroneous instruction on the issue. *See Watkins v. Hellings*, 321 N.C. 78, 361 S.E.2d 568 (1987) (evidence of contributory negligence so compelling that erroneous instruction was not prejudicial); *Brannon v. Sprinkle*, 207 N.C. 398, 177 S.E. 114 (1934) (failure of judge to instruct on proximate cause in a negligence case not grounds for new trial where evidence was such that jury could draw only one inference). Defendants' assignments of error with respect to the jury instructions are overruled.

## PLAINTIFFS' APPEAL

[4] Plaintiffs' appeal presents the single issue of whether the trial court erred in granting prejudgment interest from the date the complaint was filed rather than from the date of defendant's breach of the implied warranty of habitability. Plaintiff contends that an action for breach of an implied warranty is an action in contract, and therefore, prejudgment interest should be awarded pursuant to G.S. § 24-5(a) which provides: "In an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach."

In *Farmah v. Farmah*, 348 N.C. 586, 500 S.E.2d 662 (1998), the Supreme Court held that the equitable principles of quasi-contract are different from the legal principles of contract law, and that an action grounded in quasi-contract was not an action for breach of contract. Thus, the prejudgment interest provisions of G.S. § 24-5(a) did not apply, and the awarding of interest was controlled by G.S. § 24-5(b) which provides: "In an action other than contract, any portion of a money judgment designated by the factfinder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied."

Like the unjust enrichment claim in *Farmah*, the implied warranty of habitability was not created as a result of the parties' negotiations and assent, but rather arose by operation of law. *See Griffin*,

*supra.* The Supreme Court has stated in *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 443, 238 S.E.2d 597, 605 (1977) (quoting Corbin on Contracts, Vol. I § 19, p. 46):

> A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. If this were true, it would be better not to use the word "contract" at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretation (emphasis omitted).

Therefore, we hold that the implied warranty of habitability is a quasi-contract and the awarding of interest is governed by G.S. § 24-5(b). The trial court correctly awarded plaintiffs prejudgment interest from the date the action was instituted.

No error.

Judges McGEE and HUNTER concur.